**JANET LEE HOFFMAN, OSB No. 78114**
E-mail: janet@jhoffman.com
**JENNIFER ROBERTS, OSB No. 111837**
E-mail: jennifer@jhoffman.com
**DOUGLAS STAMM, OSB No. 161614**
E-mail: doug@jhoffman.com
**JANET HOFFMAN & ASSOCIATES LLC**
1000 S.W. Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

Attorneys for Plaintiff John Doe

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **JOHN DOE,** | **CASE NO.: 6:17-cv-01103-AA** |
| Plaintiff, | |
| v. | **PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| **UNIVERSITY OF OREGON; SANDY WEINTRAUB**, an individual acting in his personal capacity; **CAROL MILLIE**, an individual acting in her personal capacity; and **ROBIN HOLMES**, an individual acting in her personal capacity. | |
| Defendants. | |

# TABLE OF CONTENTS

Page

A. **INTRODUCTION**.................................................................................................1

B. **FACTUAL SUMMARY** .......................................................................................2

C. **ARGUMENT** .........................................................................................................6

    1. Legal Standard .................................................................................................6

    2. John Doe's Claims are Not Precluded ..........................................................7

    3. The Complaint States a Claim for Relief Under § 1983 Because Defendant Millie Violated John Doe's Due Process Rights ..................................................10

        a. John Doe Had a Constitutionally Protected Property Interest in His Continued Enrollment at the University.....................................................11

        b. The Individual Defendants Failed to Provide John Doe With Due Process During the Investigation and Adjudication of the Complaint...........................................................................................................15

            i. Defendant Millie's Failure to Provide John Doe With Access to the Whole Record Violated His Due Process Rights .........................................................................................15

            ii. John Doe's Due Process Rights Were Violated Because He Was Note Provided an Impartial Decision Maker ........................18

            iii. The Individual Defendants Are Not Entitled to Qualified Immunity.............................................................................19

    4. John Doe Pleaded Sufficient Facts to Support His Title IX, Equal Protection, and Oregon Constitutional Claims.......................................................................21

    5. John Doe's Contract Claims Should Not Be Dismissed Because the University's Code of Conduct and SOPs are Contract Provisions..................................................23

    6. John Doe's Oregon Constitutional and Contract Claims Are Note Precluded By the Writ of Review Statute...............................................................................24

    7. John Doe's Contract Claims Are Not Precluded By An Election of Remedy.............27

D. **CONCLUSION** ......................................................................................................28

# LIST OF AUTHORITIES CITED

**Page No.**

**Cases**

*Ashcroft v. Al-Kidd*, 563 U.S. 731 ...............................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................6

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................19

*Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214 (D. Or. 2016) .........................................14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................6

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .....................................11

*Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769 (7th Cir. 2013).......13

*Cloyd v. Lebanon School District 16C*, 161 Or. App. 572 ............................................26

*Conner v. Reinhard*, 847 F.2d 384 (7th Cir. 1988), cert. denied, 488 U.S. 856 (1988) ...............9

*Coto Settlement v. Eisenberg*, 593 F.3d 1031(9th Cir. 2010) .........................................7

*Dauven v. George Fox Univ.*, No. CV 093-305-PK, 2010 WL 6089077,
(D. Or. Dec. 2, 2010) ..................................................................................14, 20, 24

*Decker v. Clark,* 95 Or. App. 320 (1989) ..............................................................25, 26

*DeFrancesco v. City of Mt. Angel*, No CV-00-480-ST, 2002 WL 31466450 (D. Or. Mar. 10, 2002) .................................................................................................................25

*Doe v. Brown Univ.,* 166 F. Supp. 3d 177 (D.R.I. 2016) ..............................................22

*Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016)...............................................22

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995)..........................................................7

*Doe v. University of Cincinnati*, 872 F.3d 393, 2017 U.S. App. LEXIS 18458,
at *2 (6th Cir. Sept. 25, 2017).................................................................................11, 19

*Does 1 – 7 v. State*, 164 Or. App. 543 (1999).............................................................23

*Drews v. EBI, Cos.,* 310 Or 134 (1990) .........................................................................7

*Eckles v. State of Oregon*, 306 Ore. 380 (1988) ...............................................................23

*Esteban v. Central Missouri State College*, 415 F2d 1077 (8th Cir. 1969) .............................12, 19

*Flaim v. Med. Coll. of Ohio,* 418 F.3d 629 (6th Cir. 2005) ....................................................12, 16, 19

*Friends of Yamhill County v. Bd. Of County Comm'rs of Yamhill County*, 278 Or. App. 472, (2016) .................................................................................................................................25

*Gaspar v. Bruton*, 513 F.2d 843 (10th Cir. 1975) .................................................................12, 19

*Gorman v. University of R.I.*, 837 F.2d 7 (1st Cir. 1988) .......................................................11, 12, 16, 19

*Goss v. Lopez*, 419 U.S. 565 (1975) .....................................................................................12, 21

*Greenhill v. Bailey*, 519 F.2d 5 (8th Cir. 1975) ...................................................................12, 19

*Grosz v. Lassen Community College Dist.*, 360 Fed. Appx. 795 (9th Cir. 2009) .........................7

*Harrell v. S. Or. Univ.*, CV-08-3037-CL, 2010 WL 2326576 (D. Or. Mar. 24, 2010) ..........13, 14

*Headley v. Bacon*, 828 F.2d 1272 (8th Cir. 1987) ...............................................................10

*Hughes v. State of Oregon*, 314 Ore. 1, 838 P.2d 1018 (1992) ..............................................23

*Jones v. Board of Governors of the Univ. of N.C.*, 557 F Supp 263 (W.D.N.C. 1983), aff'd, 704 F.2d 713 (4th Cir. 1983) ...................................................................................................12, 20

*Keams v.Tempe Technical Inst., Inc.*, 39 F.3d 222 (9th Cir. 1994) .........................................7

*Lincoln Loan Co. v. City of Portland*, 317 Or. 192, 197 n.2 (1993) .......................................8

*Machunze v. Chemeketa Community College*, 106 Or. App. 707, 810 P.2d 406, rev. den., 312 Or. 16, 815 P.2d 703 (1991) .....................................................................................................27

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985) ..................................7

*Marshall v. Jerrico*, 446 U.S. 238 (1980) ...........................................................................18

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .........................................................................11, 15, 18

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) .........................................7

*Missouri v. Horowitz*, 433 U.S. 78 (1978) ...........................................................................11

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ....................................................9

*Morrissey v. Brewer*, 408 U.S. 471 (1972) .............................................................11

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................7

*Rennie v. Freeway Transport,* 294 Or 319 (1982) .................................................7

*Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *13-14 (D. Or. Feb 22, 2011) ..........13

*Spada v. Port of Portland*, 55 Or. App. 148, 637 P.2d 229 (1981) .......................................27, 28

*Stoller v. College of Med.*, 562 F. Supp. 403 (M.D. Pa. 1983), aff'd without opinion, 727 F.2d 1101 (3d Cir. 1984) ................................................................................12, 20

*Tate v. North Pacific College*, 70 Or. 160, 140 P. 743 (1914) .............................................14, 20

*Vejo v. Portland Pub. Schs.*, 204 F. Supp. 3d 1149 (D. Or. 2016) ...................................14, 20, 24

*Perry v. Sindermann*, 408 U.S. 593 (1972) ............................................................14, 20

*Warnock v. Pecos Cnty.*, 116 F.3d 776 (5th Cir. 1997) .............................................10

*Wells v. Xavier,* 7 F. Supp. 3d 746 (S.D. Ohio 2014) .................................................22

*Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972) ....................................................16

## Rules

Oregon Rules of Civil Procedure 36 ..............................................................................8

## Statutes and Guideline Provisions

Title IX of the Education Amendments of 1972 .................................................1, 17, 22

ORS 34.020 ...............................................................................................................8, 24

ORS 34.040 ...................................................................................................................8

**Constitutional Provisions**

Article I, Section 46 of the Oregon Constitution ....................................................................1, 23

Fifth Amendment to the United States Constitution....................................................................10

Fourteenth Amendment to the United States Constitution .........................................10, 12, 19, 21

**Other Authorities**

C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4458 (1981)......................10

## A. INTRODUCTION

Defendant the University of Oregon ("the University"), through Defendant Carol Millie, conducted a biased, discriminatory, and procedurally deficient investigation and adjudication of a sexual assault complaint against Plaintiff John Doe, which resulted in the University's unfairly imposing a one-year suspension on John Doe.  Defendant Millie violated John Doe's federal constitutional rights to due process and equal protection, while the University violated his rights under Title IX and under Article I, Section 46 of the Oregon Constitution. Additionally, by failing to observe its established written policies set forth in the Student Conduct Code and Standard Operating Procedures (SOPs), the University breached its contract with John Doe, including the covenant of good faith and fair dealing.

Because of the University's and Defendant Millie's wrongful actions, John Doe was forced to expend significant financial resources to obtain a reversal of the improperly imposed suspension.  He also endured severe emotional distress and a loss of educational opportunities due to the University's unfair adjudication of the false sexual assault complaint lodged against him.

The Defendants erroneously argue that John Doe's claims are barred by claim preclusion, exclusive remedy, and/or election of remedies.  Alternatively, Defendants argue that all of John Doe's causes of action fail to state a claim for which relief may be granted.  But Defendants' arguments are largely premised on distinguishable case law or on a misapplication of the law to the facts.  This Court should, therefore, reject the Defendants' Motion to Dismiss for the reasons stated below.

///

//

## A. FACTUAL SUMMARY

Plaintiff John Doe alleged in his complaint the following facts, which must be accepted as true for purposes of deciding the present motion to dismiss. In February 2016, John Doe and Jane Roe were students at the University of Oregon. That month, John Doe received notice that Jane Roe had accused him of sexual misconduct—allegations which he consistently denied as false. Compl. ¶ 14. He passed four polygraph examinations that established as true his version of events. *Id.*

Jane Roe's allegations concerned the night of February 12, 2016. On that night, Jane Roe contacted John Doe, who lived in the same dorm, claiming that she was highly intoxicated and afraid that, if she fell asleep, she might inhale her own vomit. Compl. ¶ 39. She asked John Doe to watch over her, and he agreed. *See id.* Jane Roe came to his dorm room and immediately collapsed onto his roommate's bed. *Id.* John Doe positioned her on her side to protect her from asphyxiation and removed her outer cardigan, in which her hand had become entangled. *Id.* He then left his room to take a shower. Compl. ¶ 41. After showering, he did some laundry and subsequently fell asleep on a couch in the downstairs lounge of his dorm. *Id.* Several witnesses corroborated this series of events. *Id.*

In the early morning of February 13, 2016, around 3:30 A.M., John Doe returned to his dorm room and fell asleep sitting up in his own bed, while Jane Roe continued to sleep in his roommate's bed. Compl. ¶ 42. When John Doe awoke, Jane Roe was gone. *Id.*

A few days later, Jane Roe filed a complaint with the University accusing John Doe of sexual assault. Compl. ¶ 44. Jane Roe's account of relevant events, however, was inconsistent and inaccurate. For instance, during Defendant Carol Millie's investigation of the complaint, Jane Roe falsely claimed that John Doe had made sexual advances while they were on a walk the

day before the alleged assault. Compl. ¶ 66. At the Administrative Conference (the hearing),

Jane Roe's account of the walk shifted to include new, dramatic details that appear nowhere else

in the record. Compl. ¶ 67. Similarly, Jane Roe's account of the alleged assault itself evolved

over time, which should have called into question the credibility of her testimony. Compl. ¶ 53,

72. Defendant Millie, however, unreasonably overlooked all such inconsistencies and drew all

inferences in favor of Jane Roe. *See* Compl. ¶ 65, 71, 74.

Despite Jane Roe's inconsistent testimony regarding the walk and the details of the

assault, Jane Roe consistently testified that the alleged sexual assault took place immediately

before she sent a text message to her ex-boyfriend at 3:24 A.M., in which she stated that she had

almost been raped. Compl. ¶ 54. Jane Roe's testimony regarding that chronology, however,

conflicted with bystander witnesses' testimony that, at the time she claimed the assault occurred,

they would have been able to hear sounds coming from John Doe's room. Compl. ¶ 73. They

heard nothing. *Id.*

Defendant Millie, however, dispensed with all witness testimony that undermined Jane

Roe's chronology by finding that the assault could not have occurred when Jane Roe claimed it

did. Compl. ¶ 74. Ms. Millie determined, based on "expert" evidence—that appears nowhere in

the record and that is scientifically unsupportable—that the assault must have occurred hours

earlier and that Jane Roe's memory was affected by the trauma she had apparently suffered.

Compl. ¶ 73-76. Ms. Millie's reasoning was circular and outcome-driven. Compl. ¶ 73-78.

Additionally, during the investigation of the allegations, Jane Roe provided Ms. Millie

with a screen shot of iMessages that John Doe purportedly had sent to her the morning after the

alleged assault. *See* Compl. ¶ 56. When questions arose as to what had happened to the original

iMessages, Jane Roe's advisor initially reported to Ms. Millie by email that the iMessages were

automatically deleted when Jane Roe deleted John Doe's contact information from her phone and blocked all messages from him. Compl. ¶ 57. After John Doe submitted expert evidence disproving that iMessages are automatically destroyed under such circumstances, Jane Roe changed her story, explaining through her advisor, that she had *intentionally* deleted the iMessages after taking a screen shot of them and that she had told Ms. Millie that she had intentionally deleted the messages. Compl. ¶ 58-60. Ms. Millie did not provide John Doe with Jane Roe's new explanation for the deletion of the iMessages until he arrived at the hearing, which afforded him no time to formulate a meaningful response. *See* Compl. ¶ 60, 81, 82. In violation of the University's SOPs, Defendant Millie did not, before the hearing, provide John Doe with the exhibit in which Jane Roe's attorney attempted to explain her erroneous prior statements regarding Jane Roe's deletion of the iMessages. Compl. ¶ 83.

Notably, Ms. Millie also did not provide John Doe with any information as to whether Jane Roe, as she claimed, had told Ms. Millie during the investigation about the deliberate destruction of the iMessages. *See* Compl. ¶ 60, 82. Ms. Millie, as the alleged recipient of that information, would have had first-hand knowledge as to the truth of Jane Roe's claim that she had previously disclosed the iMessages' deliberate destruction. Compl. ¶ 82. And Ms. Millie was fully aware that John Doe was seeking to determine the truthfulness of Jane Roe's claim, as well as requesting copies of any documentation from the investigation that reflected Jane Roe's disclosure. *Id.* Ms. Millie offered no information and dodged John Doe's request for documentation of any additional interviews by referring him to the material already appearing in the Fact-Gathering Investigative Record. *Id.*

Moreover, although Ms. Millie allowed John Doe to propose questions for Jane Roe's advisor regarding the circumstances surrounding the new explanation for the iMessages'

deletion, Ms. Millie made no attempt to obtain the answers but simply instructed the advisor that she could decline to answer. Compl. ¶ 86-87. Having received Ms. Millie's permission to do so, Jane Roe's advisor declined to respond to the questions. Compl. ¶ 88. Defendant Millie, in violation of the University's SOPs, allowed Jane Roe to introduce evidence into the record long after the hearing's conclusion without sufficient good cause. Compl. ¶ 91-93. After the hearing, Jane Roe submitted a Facebook message to Ms. Millie requesting its late admission to the record with the mere excuse that she had forgotten about it. Compl. ¶ 91. Ms. Millie considered Jane Roe's explanation that, for months, she had forgotten about such an apparently relevant piece of evidence to be a sufficient showing of good cause and admitted the message to the record. *See* Compl. ¶ 91, 94.

Additionally, when Ms. Millie issued her decision, she disclosed that she had relied on a summary of Facebook practices by Campus Security Officer Royce Meyers, to which she had given John Doe no opportunity to respond. Compl. ¶ 96. Again, the admission of such evidence to the record after the hearing violated the University's SOP's.

Ms. Millie also first disclosed in her decision the pseudo-scientific "expert" evidence concerning trauma and memory—evidence she relied on to excuse Jane Roe's inconsistent and inaccurate testimony. John Doe was afforded no opportunity to respond to Ms. Millie's unscientific "expert" evidence. *See* Compl. ¶ 75. Although, on appeal, John Doe submitted the expert opinion of Dr. Daniel Reisberg, a highly qualified psychologist, that exposed as junk science Ms. Millie's assumptions regarding trauma and memory, Compl. ¶ 79, the Appeals Board affirmed Ms. Millie's decision without any reference whatsoever to Dr. Reisberg's opinion, Compl. ¶ 80.

Ultimately, Ms. Millie imposed a one-year suspension as a sanction against John Doe. In reaching that decision, Ms. Millie unfairly drew every inference in the complainant's favor, took every opportunity to make adverse credibility determinations against John Doe, excused the complainant's inconsistencies (sometimes by resort to junk science), discounted without explanation John Doe's having passed four polygraph tests, and ultimately issued an arbitrary and erroneous decision against the overwhelming weight of the evidence. Compl. ¶ 106. Ms. Milllie's impermissible bias against John Doe because of his gender may be inferred from her complete and inexplicable partiality toward Jane Roe.

John Doe filed a petition for a writ of review in Lane County Circuit Court, No. 16-CV-30413 seeking reversal of the University's decision to suspend him. Compl. ¶ 16. The circuit court granted the writ and, ultimately, held that the University had not followed its established procedures during the investigation and adjudication of the sexual misconduct complaint. Consequently, the circuit court reversed the University's decision and vacated the suspension sanction. *Id.* John Doe did not seek damages in the petition for writ of review proceedings.

## B.  ARGUMENT

### 1.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face," to overcome a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

When considering the factual allegations on a Rule 12(b)(6) motion to dismiss, the Court must take the complaint's allegations of material fact as true and construe them in the light most

favorable to the nonmoving party. *Grosz v. Lassen Community College Dist.*, 360 Fed. Appx. 795 (9th Cir. 2009) (citing *Keams v.Tempe Technical Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). On a motion to dismiss, the Court may consider, in addition to the complaint, materials incorporated into the complaint or matters of public record. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted).

**2. John Doe's Claims are Not Precluded**

Contrary to the Defendants' arguments, John Doe's civil claims in this case are not precluded because they are not of a nature that they might have been joined in his petition for a writ of review. Federal courts apply state preclusion law when determining whether claim preclusion applies. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under Oregon law, claim preclusion applies when:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment . . . [brings] another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action."

*Drews v. EBI, Cos.,* 310 Or 134,140 (1990) (quoting *Rennie v. Freeway Transport,* 294 Or 319, 323 (1982)) (emphasis added). Here, the civil claims could not have been joined in John Doe's

petition for a writ of review because, as discussed below, the two actions are incompatible in terms of the required procedures and the court's role.

Indeed, John Doe originally attempted to file in Oregon circuit court a combined petition for a writ of review and civil complaint, which included the claims presented in this case. *See* Decl. of Douglas Stamm ("Stamm Decl.) ¶ 3, Ex. A. However, the Oregon circuit court rejected John Doe's original filing. The Rejected Filing Notification sent by email to John Doe's counsel stated that a petition for a writ of review and complaint had to be filed separately. *See* Stamm Decl. ¶ 4, Ex. B. Counsel for John Doe returned a telephone call from the clerk of the Oregon circuit court, who confirmed that the pleading had been rejected for the reason stated in the notice. Stamm Decl. ¶ 6. Counsel then removed the complaint portion of the document and filed only a petition for writ of review. Stamm Decl. ¶ 7.

Although, in an abundance of caution, John Doe initially attempted to seek all relief in a single action, the state court correctly insisted that the petition for a writ of review be brought separately from the civil complaint because the two actions are incompatible—both functionally and procedurally. Functionally, a petition for review initiates a proceeding that is equivalent to an appeal of a judicial or quasi-judicial decision. *See* ORS 34.020, 34.040. A civil complaint, on the other hand, initiates an entirely new case requiring *de novo* review. Procedurally, a court adjudicating a petition for review is limited in its review to the quasi-judicial record, in keeping with its appellate function. *See Lincoln Loan Co. v. City of Portland*, 317 Or. 192, 197 n.2 (1993) (observing that after the writ issues and the certified record is returned, the circuit court confines its review to the record of the inferior tribunal, it does not take new evidence and does not pass on questions of fact). A civil complaint, on the other hand, allows for discovery, *see* Oregon Rules of Civil Procedure 36, et seq., and *de novo* review. Given the fundamental

distinctions between a civil complaint and a petition for a writ of review, the two actions are <u>not</u> of a nature as could have been joined in the first action—as evidenced by the Oregon state court's rejection of John Doe's original combined pleading.  Consequently, John Doe's claims in the present action are not precluded, and this Court should reject the Defendants' arguments for dismissal on that ground.

Additionally, claim preclusion does not bar John Doe's claims against *individual* defendants because they were not parties to his petition for a writ of review nor were they in privity with the University.  Defendants argue that employees are in privity with their employer and cite an unpublished federal District of Oregon case as support.  But vicarious liability (or *respondeat superior*)—the only possible basis for privity between employer and employee— does not exist for constitutional violations.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that, even if government employees engage in unconstitutional conduct, their municipal employer is not liable unless those violations resulted from the city's policy or practice.  *Id.* at 658 (holding that "local governments could not be held liable under a theory of *respondeat superior* but rather could be held liable only when the constitutional deprivation arises from a governmental custom").  A dismissal in favor of a government employer does not necessarily preclude liability on the part of the public official, and vice versa.

Moreover, because "different legal theories may be necessary to prove liability in a personal-capacity, as opposed to an official-capacity, case [and] different defenses are available to a defendant who is sued in his personal capacity[,] courts do not generally consider an official sued in his personal capacity as being in privity with the government."  *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988), cert. denied, 488 U.S. 856 (1988).  Thus, "the relationships between a

government and its officials justify preclusion only as to litigation undertaken in an official capacity." *Id.* (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4458, at 508 (1981)); *see also Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) (holding that "a judgment against a government does not bind its officials sued in their personal capacities"); *Warnock v. Pecos Cnty.*, 116 F.3d 776, 778 (5th Cir. 1997) (holding that individual employees sued under section 1983 in their individual capacities were not in privity with the county, which had prevailed in an earlier suit brought by the plaintiff; reasoning "[r]es judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity" ). Thus, John Doe's constitutional claims brought against the individual defendants in their personal capacities are not barred even though he previously filed a petition against the University.

### 3. The Complaint States a Claim for Relief under § 1983 Because Defendant Millie Violated John Doe's Constitutional Due Process Rights

Defendant Millie incorrectly seeks to dismiss John Doe's claims alleging damages arising from her violations of his due process rights. John Doe had a legitimate claim of entitlement, whether stand-alone or arising out of contract, to his continued enrollment at the University unless he was found, pursuant to the University's established procedures, to have violated the Student Conduct Code. Ms. Millie did not follow the University's established procedures in adjudicating the claims against him. Further, Ms. Millie provided John Doe with insufficient process before depriving him of his protected property interest by failing to give him a meaningful opportunity to respond to the full record and by acting as a biased decision maker when investigating and adjudicating the allegations against him.

The Due Process Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "no person may be

deprived of life, liberty, or property without due process of law." "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations and quotations omitted).

Analysis of a procedural due process claim proceeds in two steps. First, a constitutionally protected liberty or property interest must be identified. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Second, if a court determines that a protected property or liberty interest is at stake, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The amount of process due will vary according to the facts of each case and must be evaluated by balancing the *Mathews v. Eldridge* factors, specifically:

> • the importance of the private interest that will be affected by the official action;
>
> • the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or substitute procedural safeguards; and
>
> • the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335; *see Gorman v. University of R.I.*, 837 F.2d 7, 13 (1st Cir. 1988) (applying *Mathews* factors in context of university student disciplinary hearing). Notably, the process due before a disciplinary suspension is greater than that for academic suspensions. *See, e.g.*, *Missouri v. Horowitz*, 433 U.S. 78, 86 (1978) (academic decisions "call[] for less stringent procedural requirements").

### a. John Doe Had a Constitutionally Protected Property Interest in His Continued Enrollment at the University

John Doe had a protected property interest in his continued enrollment at the University of Oregon. *See, e.g.*, *Doe v. University of Cincinnati*, 872 F.3d 393, 2017 U.S. App. LEXIS

18458, at *2 (6th Cir. Sept. 25, 2017) ("The Due Process Clause guarantees fundamental fairness to state university students facing long-term exclusion from the educational process."); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) (affirming that the Due Process Clause is implicated by state university disciplinary decisions); *Gorman v. University of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988); *Greenhill v. Bailey*, 519 F.2d 5, 7 (8th Cir. 1975) (analyzing academic dismissal from state medical college and holding: "[J]udicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property. It is <u>well established</u> that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection." (citations omitted and emphasis added)); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) ("We have no difficulty in concluding that in light of *Goss*, where the Supreme Court recognized a property right in public school students that certainly such a right must be recognized to have vested with [the university student], and the more prominently so in that she paid a specific, separate fee for enrollment and attendance . . . "); *Esteban v. Central Missouri State College*, 415 F2d 1077, 1089 (8th Cir. 1969) (holding that procedural due process must be afforded in disciplinary proceeding brought against student by college, in the form of adequate notice, definite charge, and hearing with opportunity to present one's side of case); *Jones v. Board of Governors of the Univ. of N.C.*, 557 F Supp 263 (W.D.N.C. 1983) (noting that "[i]t is well settled that when a public school or state university takes disciplinary action against a student which, for any substantial length of time, deprives the student of the opportunity to continue his or her education, the school must afford the student due process of law"), aff'd, 704 F.2d 713 (4th Cir. 1983)); *Stoller v. College of Med.*, 562 F. Supp. 403, 412 (M.D. Pa. 1983), aff'd without opinion,

727 F.2d 1101 (3d Cir. 1984). *But see Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) (holding that there is no "stand-alone" property interest in continued enrollment at public university, although such an interest may arise from a contract between a student and the university).

In the Motion to Dismiss, the Defendants cite a handful of District of Oregon cases in support of their argument that a student has no property or liberty interest in continued enrollment at a public university. Those cases, however, are non-binding on this court and break with the considerable weight of authorities holding that suspension or expulsion from a public university implicates a student's due process rights. *See id.* Moreover, the cases cited by Defendants are all distinguishable on the facts.

*Ryan v. Harlan*, an unpublished magistrate decision on which the Defendants rely, is wholly distinguishable from this case. Unlike John Doe, the plaintiff in that case was not an enrolled student at the defendant-university, had no contract right to the university's promised procedures, and had not been stripped of his interest in continued enrollment pursuant to a deficient disciplinary process. *See Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *13-14 (D. Or. Feb 22, 2011). Thus, *Ryan* is inapplicable where, as here, an enrolled student is deprived of his property interest to continued enrollment without being afforded due process.

Similarly, *Harrell v. S. Or. Univ.*, CV-08-3037-CL, 2010 WL 2326576, at *8-11 (D. Or. Mar. 24, 2010), another unpublished magistrate decision, is distinguishable because the plaintiff-student was subject to only a *warning* for having violated the university's conduct code by posting disrespectful comments on online class discussion boards. *Id.* Unlike John Doe, the plaintiff in *Harrell* was not subject to suspension or expulsion; indeed, he lost no privileges whatsoever and the violation was not even placed on his academic record. *Id.* Consequently,

unlike in the present case, the *Harrell* plaintiff's due process interest in continued enrollment at the university was not at issue.

Finally, *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214 (D. Or. 2016), is distinguishable because, there, the plaintiffs did not raise, and the court did not address, the due process interest arising from a <u>contract</u> between a student and the university at which he is enrolled and to which he pays tuition. Oregon state law recognizes that the relationship between students and universities is contractual in nature. *Tate v. North Pacific College*, 70 Or. 160, 165, 140 P. 743 (1914) ("The defendant issued its catalogue, stating its requirements for graduation and for the conferring upon candidates of the degree of Doctor of Dental Medicine, and the plaintiff, with knowledge of those requirements, entered the college, matriculated and attended its sessions, with the intention of obtaining said degree. These acts on the part of the college and of the plaintiff constituted a contract."); *see Dauven v. George Fox Univ.*, No. CV 093-305-PK, 2010 WL 6089077, *49-51 (D. Or. Dec. 2, 2010) (holding Oregon law recognizes that a student and a university have a contractual relationship "based on the terms contained in publications that the university provides to the student"); *Vejo v. Portland Pub. Schs.*, 204 F. Supp. 3d 1149, 1175-77 (D. Or. 2016) (finding Lewis and Clark student who paid tuition to the college in exchange for educational services could enforce as a contract term the non-discrimination statement found in the university's Course Catalog). The United States Supreme Court has long recognized that a contract right is a "legitimate claim of entitlement" that qualifies as a protected property interest. *See Roth*, 408 U.S. at 576-77; *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972) ("[T]he existence of rules and understandings, promulgated and fostered by state officials, . . . may justify [a] legitimate claim of entitlement.").

Thus, John Doe has a constitutionally protected property interest in his continued enrollment—either a stand-alone property interest or one which arises out of his contract with the University. John Doe paid tuition to the University in exchange for educational services, with the mutual understanding that he would not be suspended without the benefit of a procedurally fair adjudication that complied with the University's policies and procedures as set forth in the Student Conduct Code and the SOPs. As is discussed below, John Doe was denied such a hearing by Defendant Millie, and his § 1983 due process claims against her should not be dismissed.

### b. The Individual Defendants Failed to Provide John Doe With Due Process During the Investigation and Adjudication of the Complaint

Defendant Millie's biased and procedurally deficient investigation and adjudication deprived John Doe of his protected interest in his continued enrollment at the University without due process. As noted above, to determine what, in this case, constitutes sufficient process, a court must balance the importance of John Doe's interest in his uninterrupted enrollment at the University; the risk of an erroneous suspension through the procedures used and the probable value of an additional or substitute procedural safeguard; and the University's interest in avoiding the burden that an additional or substitute procedural requirement would entail. *Mathews*, 424 US at 335.

### i. Defendant Millie's Failure to Provide John Doe With Access to the Whole Record Violated His Due Process Rights

First, as alleged in the Complaint, Ms. Millie failed to provide John Doe access to the full record by allowing the complainant to testify at the hearing in a separate room without supplying a video feed of her testimony to John Doe's room. Consequently, John Doe was unable to observe the non-verbal responses and demeanor of the complainant during the hearing, although

the decision maker had access to all such information. In a "he said, she said" case such as this, the ability to assess and, if necessary, to test the credibility of the complainant is crucial. *Winnick v. Manning*, 460 F.2d 545, 549-50 (2d Cir. 1972) (acknowledging that cross-examination of witnesses might be essential to a fair hearing if credibility is at issue in the suspension of a university student). Without access to information concerning the complainant's demeanor, the accused is left without critical information that might lead him to probe more thoroughly the complainant's testimony. And without the ability to test fully the complainant's credibility, there is a grave risk that false testimony about the central factual issues of the case may lie.

Additionally, John Doe alleged in the Complaint that he was denied access to the full record because Defendant Millie: 1) did not document all interviews of the Complainant; 2) did not provide John Doe with Jane Roe's advisor's explanation for the destruction of the iMessages until the day of the hearing, and then did not require Jane Roe's advisor to answer John Doe's questions testing the credibility of that explanation; 3) did not disclose Officer Meyers's summary regarding Facebook practices until issuing her decision, thereby giving John Doe no opportunity to respond to the summary; and 4) did not give John Doe an opportunity to respond to her pseudo-scientific assumptions concerning trauma and memory before issuing her decision. *See Flaim*, 418 F.3d at 635-36 ("The hearing, whether formal, informal, live or not, must be meaningful and must provide the accused with the opportunity to 'respond, explain, and defend.'" (quoting *Gorman*, 837 F.2d at 13)).

To guard against the risk that false testimony or erroneous "expert" opinions might result in a student's unwarranted suspension, all that need be done is to provide the accused with access to the full record and an opportunity to respond to that record. Such simple procedures are not

onerous.  The burden on the University of implementing additional safeguards such as those proposed here would be minimal.

With regard to providing an accused with access to the complainant's non-verbal testimony, the University should have had little trouble setting up a video feed so that the parties might observe one another as they testify.  Indeed, a Title IX guidance on which the University previously claimed it relied suggests such a closed-circuit feed as an alternative to requiring the parties to testify before one another.

Even less onerous is a procedure that would require the University to provide the accused student with access to the full record and an opportunity to respond to the evidence against him. The Defendants cannot plausibly argue that such a procedure would be too onerous because, in fact, such a procedure is already required by the University's Student Conduct Code and SOPs. All that need be done is that the decision maker must document all interviews, provide access to all information in the case file, and allow the accused to respond to all information on which she might base her determination *before* her decision is issued.  If the record is supplemented after the Administrative Conference with additional testimony or expert opinions, the decision maker can merely delay issuing the decision until the accused has had a reasonable opportunity to respond to the new information.

While the burden on the University would be minimal, the private interest at stake is extremely important because a college education is crucial to one's future employment prospects.  The ability to pursue one's education and employment in one's chosen field may be severely limited if one is branded a sexual assailant and suspended for a significant period of time.  Given the importance of the private interest in this case, the relatively low burden of implementing the proposed additional safeguards, and the grave risk of error without such

additional procedures, the balance of the *Mathews* factors clearly weigh in favor of requiring the

procedures outlined above to assure the basic fairness of the University's disciplinary hearings.

   ii.    **John Doe's Due Process Rights Were Violated Because He Was Not Provided an Impartial Decision Maker**

An impartial tribunal is a fundamental component of due process. *See, e.g.*, *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process. The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law." (internal citations omitted)); *Winnick*, 460 F.2d at 548 (a fundamental requirement of due process in school disciplinary proceedings is that a hearing must be accorded before an impartial decision maker).   Defendant Millie, however, was not an impartial decision maker, and John Doe sufficiently alleged in his complaint facts that support his due process claim arising from her bias.   For instance, John Doe alleges that Ms. Millie's bias is apparent from her written decision in which she draws all inferences in favor of Jane Roe (even when such inferences are unreasonable) and makes all credibility determinations in favor of Jane Roe, despite the many inconsistencies in her testimony.  Further, Ms. Millie made pseudo-scientific excuses for the complainant's many inconsistencies.  At the same time, Ms. Millie discounted, without explanation, John Doe's consistent testimony that was corroborated by four polygraph reports.

Ms. Millie even refused to settle the hotly contested issue whether Jane Roe, as she claimed, told Ms. Millie during the investigation that she had deliberately destroyed highly

relevant iMessages. Thus, the complaint alleges ample facts of actual bias to support John Doe's claim that Ms. Millie was not impartial and that he was therefore denied due process.

### iii. The Individual Defendants Are Not Entitled to Qualified Immunity

Qualified immunity provides an official with immunity from suit for civil damages unless his or her conduct violates a "clearly established" constitutional right. An official violates a clearly established constitutional right if, "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)) (internal quotations omitted).

John Doe's right to due process was clearly established at the time of the disciplinary proceedings. As is catalogued above, most circuit courts that have addressed the issue have held that a university student's due process interests are implicated when, as here, the student is faced with a potential suspension or expulsion. *See e.g.*, *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005); *Gorman v. University of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988); *Greenhill v. Bailey*, 519 F.2d 5, 7 (8th Cir. 1975) (analyzing academic dismissal from state medical college and holding: "[J]udicial intervention in school affairs regularly occurs when a state educational institution acts to deprive an individual of a significant interest in either liberty or property. It is well established that when such a deprivation occurs the procedural safeguards embodied in the Fourteenth Amendment are called into play, and courts will not hesitate to require that the affected individual be accorded such protection." (citations omitted and emphasis added)); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975); *Esteban v. Central Missouri State*

*College*, 415 F.2d 1077, 1089 (8th Cir. 1969) (holding that procedural due process must be afforded in disciplinary proceeding brought against student by college, in the form of adequate notice, definite charge, and hearing with opportunity to present one's side of case); *see also Jones v. Board of Governors of the Univ. of N.C.*, 557 F. Supp. 263 (W.D.N.C. 1983) (noting that "[i]t is well settled that when a public school or state university takes disciplinary action against a student which, for any substantial length of time, deprives the student of the opportunity to continue his or her education, the school must afford the student due process of law" (emphasis added)), aff'd, 704 F.2d 713 (4th Cir. 1983)); *Stoller v. College of Med.*, 562 F. Supp. 403, 412 (M.D. Pa. 1983), aff'd without opinion, 727 F.2d 1101 (3d Cir. 1984).

Further, as noted above, John Doe's contract right to the University's promised procedures was clearly established—since the year 1914—under Oregon law. *Tate v. North Pacific College*, 70 Or. 160, 165, 140 P. 743 (1914) ("The defendant issued its catalogue, stating its requirements for graduation and for the conferring upon candidates of the degree of Doctor of Dental Medicine, and the plaintiff, with knowledge of those requirements, entered the college, matriculated and attended its sessions, with the intention of obtaining said degree. These acts on the part of the college and of the plaintiff constituted a contract."); *see Dauven v. George Fox Univ.*, No. CV 093-305-PK, 2010 WL 6089077, *49-51 (D. Or. Dec. 2, 2010); *Vejo v. Portland Pub. Schs.*, 204 F. Supp. 3d 1149, 1175-77 (D. Or. 2016). Moreover, the United States Supreme Court has long recognized that a contract right is a "legitimate claim of entitlement" that qualifies as a protected property interest. *See Roth*, 408 U.S. at 576-77; *Perry*, 408 U.S. at 601-02 ("[T]he existence of rules and understandings, promulgated and fostered by state officials, . . . may justify [a] legitimate claim of

entitlement." (emphasis added)). Thus, the individual defendants are not entitled to qualified immunity because they should have reasonably known that, pursuant to clearly established law, John Doe was entitled to due process under the Fourteenth Amendment.

Further, the individual defendants should have reasonably known that their actions violated John Doe's due process rights. First, the biased investigation and adjudication against John Doe denied him one of the most basic, clearly established components of due process: an impartial decision maker. *See Jerrico*, 446 U.S. at 242. Second, it is clearly established law that, when a due process interest is at stake, a student facing even a temporary suspension must "be given oral or written notice of the charges against him and, if he denies them, <u>an explanation of the evidence</u> the authorities have, and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (emphasis added). As is alleged in the complaint, Ms. Millie failed to provide John Doe with access to crucial evidence against him and thereby denied him any meaningful opportunity to present his defense. Third, when a case hinges on the credibility of the complainant, as it did in John Doe's case, it should be apparent to a reasonable decision-maker that due process demands that the accused have access to the non-verbal responses and demeanor of the complainant. *See Winnick*, 460 F.2d at 549-50 (acknowledging that cross-examination of witnesses might be <u>essential</u> to a fair hearing if credibility is at issue in the suspension of a university student).

## 4. John Doe Pleaded Sufficient Facts To Support His Title IX, Equal Protection, and Oregon Constitutional Claims

John Doe pleaded sufficient facts to demonstrate the apparent bias Defendant Millie and the University harbored against him to suggest the Defendants were motivated by gender bias. In the complaint, John Doe laid out the many times that Ms. Millie inexplicably overlooked or excused Jane Roe's inconsistencies, bent the procedural rules (for instance, to allow Jane Roe's

additional evidence to be admitted to the record after the hearing) and discredited without explanation John Doe's evidence. Compl. ¶ 109.  Plaintiff further alleged that the University was under pressure to respond to public criticism of colleges' mishandling of claims of sexual assault that made it impossible for the University to impartially determine the facts. Compl. ¶ 107-08.

Courts have properly held that a lower pleading standard than that typically required should apply to discrimination claims.  Allegations suggesting a pattern of discrimination against males accused of sexual assault are sufficient to show that gender bias motivated an erroneous outcome. To require more is, practically speaking, impossible and inconsistent with pleading standards governing other types of discrimination claims. *See Doe v. Brown Univ.,* 166 F. Supp. 3d 177, 190 (D.R.I. 2016); *Wells v. Xavier,* 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014). After all, the facts necessary to support a discrimination claim are usually held closely by universities, and thus, at least *some* discovery should be conducted on the matter.

Indeed, the Second Circuit recently extended the pleading standards for Title VII employer discrimination cases to Title IX cases, requiring only a minimal plausible inference of discrimination to survive a motion to dismiss. *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). In *Columbia University*, the Second Circuit correctly overturned the district court's opinion and found that an atmosphere of internal and public scrutiny of the University's treatment of sexual misconduct allegations created a plausible inference in favor of plaintiffs' sex discrimination claim. *Id.*  The court therefore held that the plaintiffs' Title IX complaints should not have been dismissed.  Similarly, as noted above, John Doe has pleaded facts supporting a plausible inference that the University's biased treatment of his case was motivated by gender bias, and his claims should therefore not be dismissed.

By the same token, John Doe has pleaded sufficient facts to raise the plausible inference that the Defendants' biased investigation and adjudication of his claims were the product of

intentional discrimination.  Thus, his federal equal protection claim against Ms. Millie should stand as should his claim against the University under Article I, Section 46 of the Oregon Constitution.

**5. John Doe's Contract Claims Should Not Be Dismissed Because the University's Code of Conduct and SOPs are Contract Provisions**

The University incorrectly argues that, because its Code of Conduct and SOPs carry the force of law, they cannot constitute the terms of a contract.  There is no categorical rule that an established policy that carries the "force of law" cannot be the basis of a contract.  Rather, the one case cited by the University in support of its contention collects cases acknowledging the existence of "statutory contracts" created by the Oregon state legislature.  *See Does 1 - 7 v. State*, 164 Or. App. 543, 553 (1999) (holding that a state adoption statute did not create a contract between the state and birth mothers requiring that the state guarantee the confidentiality of the  mothers' identities, but recognizing that the legislature had created statutory contracts with state employees through PERS legislation (citing *Hughes v. State of Oregon*, 314 Ore. 1, 13, 838 P.2d 1018 (1992)) and legislation establishing a particular trust fund for worker's compensation (citing *Eckles v. State of Oregon*, 306 Ore. 380, 390, 760 P.2d 846 (1988))).

Further, although *some* statutory contracts may be identified by "a legislative commitment not to repeal or amend the statute in the future," such a commitment, contrary to the University's suggestion, is <u>not</u> required to create a statutory contract.  *See id.*  Rather, whether a statute carrying the force of law constitutes a contract depends on the circumstances addressed by the statute and whether "the state, as a contracting party . . . , was in a role that was essentially the same as the role of any contracting party in a commercial transaction between private parties."  *Does* 1 – 7, 164 Or. App. at 556.  As noted above,

Oregon courts have recognized repeatedly that the stated policies of a private university constitute the terms of a contract between the university and the students who pay that university tuition with the expectation that such policies will govern their relationship. *See Tate*, 70 Or. at 165; *Dauven*, 2010 WL 6089077, *49-51; *Vejo*, 204 F. Supp. 3d at 1175-77.

Essentially, the University's argument boils down to the assertion that it is a public institution, and therefore its promises to tuition-paying students regarding its established policies are unenforceable as contracts—even if identical promises by private institutions are enforceable as contracts. That argument is manifestly contrary to the case law cited by the University, and this Court should reject the University's motion to dismiss John Doe's contract claims.

Moreover, even if the University's Student Conduct Code contains a statement that the University may revise the Code's procedures and that such revisions will apply retroactively to pending complaints, no such revision excused the University's failure to observe its then-current procedures in this case. The procedures were not amended. Thus, even if the Code was *subject* to amendment, John Doe had a contract right to expect that the University would observe whatever procedures were in effect at the time his case was investigated and adjudicated. As noted above and as alleged in his Complaint, the University did not observe those procedures and consequently breached its contract with John Doe.

**6. John Doe's Oregon Constitutional and Contract Claims Are Not Precluded By the Writ of Review Statute**

The University erroneously reads ORS 34.020 as precluding John Doe's state civil claims because the statute provides that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, *and not otherwise*." (Emphasis added). John Doe,

however, is not seeking through his civil claims to have the University's quasi-judicial decision reviewed for errors—that is, he is not pursuing a reversal of the University's decision to suspend him, which he properly obtained through the previous writ of review procedure. Rather, John Doe is seeking *damages* resulting from the University's actions that violated the Oregon Constitution and breached its contract with him.

The cases cited by the Defendants are wholly inapplicable to the circumstances presented here. In *Friends of Yamhill County v. Bd. Of County Comm'rs of Yamhill County*, 278 Or. App. 472, 484 (2016), the court held that the landowner-plaintiffs could not seek a reversal of the county commissioners' zoning decision both through a petition for a writ of review and an action for a declaratory judgment. There, the relief sought in the two actions was substantially the same – reversal of a quasi-judicial decision regarding the landowners' vested rights. The court explicitly premised its reasoning on precedent holding that the writ of review statute precludes filing a declaratory action seeking substantially the same relief available through a petition for a writ of review. Here, John Doe, unlike the plaintiffs in *Friends of Yamhill County*, is seeking relief that is entirely different from that sought in his petition for writ of review, namely, <u>damages</u> arising from the violation of his constitutional rights and the University's breach of contract.

True, in *DeFrancesco v. City of Mt. Angel*, No CV-00-480-ST, 2002 WL 31466450 (D. Or. Mar. 10, 2002), a federal magistrate judge suggested that a plaintiff's state claims for damages should be dismissed because the writ of review was the sole procedure for reviewing the police chief's decision to fire the plaintiff. However, the magistrate's suggestion in *DeFancesco* is not binding on this court and its reasoning should be rejected because it is premised on a misinterpretation of the Oregon case *Decker v. Clark*, 95 Or. App. 320, 324 (1989). *See DeFrancesco*, 2002 WL 31466450, at *22-24. In *Decker*, the plaintiffs had

challenged their termination as Portland Police sergeants, seeking both the reversal of the Portland Police Chief's decision <u>and</u> damages.  The plaintiffs could have sought the reversal of the Chief's quasi-judicial decision to fire them only through a petition for a writ of review.  Because plaintiffs sought—in addition to damages—relief that could only be obtained through a petition for writ of review, the Oregon Court of Appeals dismissed their civil suit.  Thus, *Decker* does not stand for the proposition that state-law claims for damages must be dismissed when, as here, a plaintiff seeks *only* damages and does not at the same time pursue the reversal of the inferior tribunal's quasi-judicial decision.  Moreover, *Decker* does not address the situation presented here, i.e., where a plaintiff successfully brought a petition for a writ of review to correct the errors of the inferior tribunal's decision and later sought damages through a subsequent civil suit.  In short, the case law cited by the University does not support its argument that a petition for review is the exclusive remedy for plaintiff's Oregon Constitution claim and contract claims.

With respect to the contract claims in particular, the University acknowledges that Oregon courts have recognized that, where an action seeks to enforce rights arising from the terms of a contract rather than from an extra-contractual source, the action may be brought in contract even though the remedy might otherwise be available through a writ of review.  *See* M. to Dismiss 28 n.10 (citing *Cloyd v. Lebanon School District 16C*, 161 Or. App. 572, 985 P.2d 232 (1999) ("Those interests of the parties which exist by virtue of a contract may be protected by contract remedies.  The writ-of-review statutes do not alter that rule or serve to abolish established common law remedies.")).  As is discussed above, the University's Student Code of Conduct and SOPs constitute the terms of a contract between John Doe and the University, and the University's breach

of that contract, as well as its breach of the covenant of good faith and fair dealing are properly brought in the present civil suit for damages.

### 7. John Doe's Contract Claims are not Precluded by An Election of Remedy

Despite the University's argument to the contrary, John Doe's contract claims are not barred based on an election of remedies because he did not elect to pursue an administrative remedy in the *inferior tribunal*—that is, the University's investigation and adjudication of the sexual misconduct complaint. Defendants incorrectly attempt to characterize John Doe's filing a petition for a writ of review as an election of remedy, when, in fact, he had no choice but to use that procedure to challenge the University's erroneous quasi-judicial decision. He did not, however, elect to initiate the University's quasi-judicial disciplinary hearing rather than pursue a contract claim—which is the salient fact under the law cited by the University.

The case law cited by the University is easily distinguished. *Spada v. Port of Portland*, 55 Or. App. 148, 637 P.2d 229 (1981), and *Machunze v. Chemeketa Community College*, 106 Or. App. 707, 714, 810 P.2d 406, rev. den., 312 Or. 16, 815 P.2d 703 (1991) both turn on whether a plaintiff voluntarily submitted his claim for an administrative hearing to the inferior tribunal, not whether a plaintiff later filed a petition for a writ of review. In *Spada*, the plaintiffs' contract claim was barred because plaintiffs had first submitted a claim to the executive director of the Port of Portland for an administrative determination, even though no rule or statute required them to do so. In the later contract action, the plaintiffs sought to enforce the defendant's unilateral promise to pay a certain amount for nursery stock on property purchased by the Port of Portland, the same issue that had been decided by the Port's executive director. The Oregon Court of Appeals held that, if the plaintiffs had not elected to use the administrative process, they might have had a right to bring an independent action for breach of contract. However, because

the plaintiffs chose the administrative hearing procedure, they could obtain judicial review of that decision only by means of a writ of review. *See Spada*, 55 Or. App. at 154.

Similarly, in *Mchunze*, the plaintiff voluntarily filed an internal complaint seeking an administrative review of her employer's failure to renew her employment contract. 106 Or. App. at 709. No statute or rule required her to do so; she elected to do so. Consequently, her only remedy was to seek review of the administrative decision through a petition for a writ of review; she could not also pursue a contract claim. *Id.* at 714.

Thus, neither *Spada* nor *Mchunze* stands for the proposition that filing a *petition for a writ of review* extinguishes a plaintiff's ability to pursue state law claims for damages under contract law and for violations of the Oregon constitution. This Court should therefore reject the Defendants' motion to dismiss John Doe's Oregon contract claims.

## C. CONCLUSION

For the reasons stated above, this Court should deny Defendants' motion to dismiss John Doe's § 1983 claims against the individual defendants; Title IX claim against the University; Oregon Constitutional claim against the University; and contract claims against the University.

Respectfully submitted this 23rd day of October, 2017.

*/s/ Jennifer Roberts*
**DOUGLAS STAMM, OSB No. 161614**
E-mail: doug@jhoffman.com
**JANET LEE HOFFMAN, OSB No. 78114**
E-mail: janet@jhoffman.com
**JENNIFER ROBERTS, OSB No. 111837**
E-mail: jennifer@jhoffman.com
Janet Hoffman & Associates LLC
1000 S.W. Broadway, Ste. 1500
Portland, OR 97205
Telephone: (503) 222-1125

Attorneys for Plaintiff John Doe