IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LANE

| | |
|---|---|
| JOHN DOE, | Case No. _____ |
| Petitioner-Plaintiff, | **COMPLAINT (Violation of Federal Civil Rights Law (42 U.S.C. § 1983), Violation of Title IX); PETITION FOR WRIT OF REVIEW PURSUANT TO ORS CHAPTER 34** |
| v. | |
| UNIVERSITY OF OREGON; SANDY WEINTRAUB, an individual acting in his personal capacity; CAROL MILLIE, an individual acting in her personal capacity; ROBIN HOLMES, an individual acting in her personal capacity. | STAY REQUESTED |
| | FILING FEES: $252 (ORS § 21.135(1), (2)(g)); $252 (ORS 21.135(1), (2)(e)); $100 (ORS § 34.050)). |
| Respondents-Defendants. | CLAIM NOT SUBJECT TO MANDATORY ARBITRATION |
| | DEMAND FOR JURY TRIAL |

Petitioner-Plaintiff, John Doe ("John Doe"), by and through his undersigned attorney hereby alleges against Respondents-Defendants the University of Oregon, Sandy Weintraub, Carol Millie, and Robin Holmes:

## PARTIES

1.

Petitioner-Plaintiff John Doe (hereinafter "John Doe"), is a citizen and a resident of Oregon, and at all relevant times was a student duly enrolled at the University of Oregon ("the University").

PAGE 1 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 1 of 47**

1          2.

2          Petitioner-Plaintiff's name is represented herein by pseudonym as required under the

3    Family Education Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99).

4    FERPA controls to the extent that it is not in conflict with constitutional rights and privileges.

5    *See also* UTCR 2.010(11)(a)(ii).

6

7          3.

8          Defendant-Respondent the University of Oregon ("University") is a public university

9    established by state statute.  ORS 352.002(1).  The University is a governmental entity

10   performing governmental functions and exercising governmental powers.  ORS 352.033.  The

11   University is an institution of higher education that receives federal funding and is subject to

12   Title IX (20 USC §§ 1681 *et seq*).

13

14         4.

15         The University has a governing Board of Trustees, ORS 352.054, and is located in

16   Eugene, Oregon.

17

18         5.

19         State law authorizes the University to establish policies for the administration of the

20   university that have the force of law and may be enforced through university procedures.  ORS

21   352.087(1)(m).  The Board may delegate and provide for the further delegation of university

22   powers, rights, duties, and privileges.  (Article III, University Bylaws, approved September 11,

23   2015.)

24         ///

25         ///

26

PAGE 2 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 2 of 47**

6.

The University, through its Director of Student Conduct and Community Standards, has developed procedures to control the investigation and adjudication of allegations of sexual misconduct by the university's students.  *See* University of Oregon "Student Conduct Standard Operating Procedures Regarding Sexual Misconduct, Sexual Harassment, and Unwanted Sexual Contact" ("Procedures") (available at https://uodos.uoregon.edu/StudentConductandCommunity Standards/SexualMisconduct.aspx) (last viewed June 6, 2016).

7.

At all times material hereto, the University acted by and through its agents, servants, employees, and representatives, who were acting in the course and scope of their respective agencies or employment and/or in the promotion of the University's business, mission and/or affairs.

8.

Defendant Sandy Weintraub is, and was at all relevant times, the Director of Student Conduct & Community Standards at the University.  The University's Procedures for investigating and adjudicating student sexual misconduct allegations were developed by the Office of the Director.  *See* Procedures, preamble.  The Director appoints the Decision-maker to investigate and adjudicate the allegations in a specific case.  *Id.* at section 7.  Upon information and belief, Mr. Weintraub resides in Oregon.

///

///

///

PAGE 3 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 3 of 47**

9.

Defendant Carol Millie is, and was at all relevant times, Senior Equal Opportunity Specialist in the Office of Affirmative Action and Equal Opportunity at the University.  Millie was the University's designated representative, or "Decision-maker," responsible for investigating and adjudicating allegations of student sexual misconduct against John Doe.  In that capacity, Millie served as the hearing officer for the adjudicative proceeding regarding the allegations against John Doe.  Upon information and belief, Ms. Millie resides in Oregon.

10.

Defendant Robin Holmes is, and was at all relevant times, Vice President for Student Life at the University.  Upon information and belief, Dr. Holmes resides in Oregon.

**JURISDICTION:**

11.

This court has jurisdiction over the petition for a writ of review because the petition is timely filed within 60 days of the decisions and determinations sought to be reviewed, which were rendered on or about September 7, 2016. ORS 34.030.

12.

This court has jurisdiction over the claims arising under Title IX and 42 U.S.C. § 1983 pursuant to ORS 14.030.

**VENUE:**

13.

Venue is proper because the decisions and determinations challenged through the petition for a writ of review were made in this county.  ORS 34.030; ORS 14.060.

PAGE 4 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 4 of 47**

## STATEMENT OF FACTS

### 14.

In February 2016, John Doe and Jane Roe were students at the University of Oregon. That month, John Doe received notice that Jane Roe had accused him of sexual misconduct— allegations which he consistently and vehemently denied as false.  He also passed four polygraph examinations that established as true his version of events.  After a biased investigation and procedurally inadequate adjudication of the allegations, however, the University suspended John Doe for one year.  The University Appeals Board affirmed the decision and sanction on September 7, 2016.

### **Applicable Procedure**

### 15.

The University's Student Conduct Code and Sexual Misconduct Standard Operating Procedures ("SOPs") set forth the school's policies and procedures for investigating and adjudicating alleged disciplinary violations, including alleged violations of the University's sexual misconduct policies.

### 16.

The Student Conduct Code sets forth the general procedural protections an accused student may expect, and states: "Procedural fairness is basic to the proper enforcement of all University regulations."

### 17.

The Conduct Code further states: "Regulations and disciplinary sanctions affecting the conduct of all Students shall be based on general principles of equal treatment."

PAGE 5 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 5 of 47**

18.

The Conduct Code guarantees a student accused of sexual misconduct an "opportunity to respond to all information provided . . . ." to the decision maker.

19.

The Sexual Misconduct SOPs set forth in greater detail the procedures to be followed in investigating and adjudicating complaints of sexual misconduct.

20.

The SOPs state: "[T]hese procedures shall be interpreted and applied consistent with the Violence Against Women Act, Title IX, their implementing regulations and relevant agency guidance, and other controlling state and federal law."

21.

Pursuant to the University's procedures, the investigation and adjudication of student sexual misconduct allegations typically proceed according to the following time frames:

a.  Fact-gathering investigation (40 days)

b.   Review of Record (a period of 5 calendar days after the closing of the fact-gathering investigation)

c.  Administrative Conference (5 calendar days after the close of the Review of Record)

These timeframes may only be altered or extended for good cause.  *See* Procedures, section 8.

22.

The fact-gathering process, together with the Administrative Conference, constitute the mechanism by which the University assesses and takes formal disciplinary action regarding a student misconduct violations of university policy.  *Id.*, section 10.

PAGE 6 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 6 of 47**

23.

The University may designate an appropriate university representative, referred to as the "Decision-maker," to both investigate and adjudicate the allegations in a specific case. *Id.*, section 7.

24.

The Decision-maker controls the record and, based on that record, determines by a preponderance of the evidence whether the accused student committed misconduct.

25.

As the gatekeeper of the record, the Decision-maker is authorized by the University's procedures to take necessary measures throughout the investigation and adjudication process to ensure that each party is afforded constitutionally sufficient notice and opportunity to view and respond to evidence. *Id.*, section 10.

26.

The Decision-maker is charged with creating a record of all relevant information obtained before or during the fact-gathering investigation ("Record"). The Decision-maker is required to provide notice to the parties involved at least ten days prior to the conclusion of the fact-gathering process. The notice must include the date the fact-gathering process will conclude, the time period for reviewing the record, and the date of the Administrative Conference. *Id.*, section 9.

///

///

///

PAGE 7 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

27.

The accused student and the complainant are to be afforded an opportunity to review the record for a period of five days after the conclusion of the fact-gathering investigation, and before the Administrative Conference. *Id*.

28.

The Administrative Conference is intended to provide fair, ample, and equal opportunity for each party to respond to the Record, including posing questions to the Decision-maker, the other party, and witnesses. *Id*., section 10.

29.

At the Administrative Conference, the parties may not directly question other parties or witnesses. Only the Decision-maker may pose questions to the complainant and the accused student, including questions suggested and provided in writing by the parties. The parties' proposed questions become part of the Record. The Decision-maker poses questions to a witness or party to whom the question is directed if she concludes that the questions are relevant and not unduly harassing. Responses to these questions become a part of the Record. *Id*.

30.

The University's procedures expressly prohibit both the accused and the complainant from introducing new or additional evidence after the conclusion of the fact-gathering process. Such evidence is not to be considered and will not become part of the record. *Id*., section 9. The procedures also separately and specifically bar the admission of any new or additional evidence at the Administrative Conference that was available and could have been provided but was not previously provided to the Decision-maker during the fact-gathering investigation. Such

PAGE 8 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 8 of 47**

1    evidence will not be allowed or considered.  *Id.*, section 10.  The only exception to these rules is

2    for good cause.  *Id.*, sections 9 and 10.

3                                             31.

4

5         To justify the introduction and consideration of new or additional evidence for good

6    cause, a party may petition the Decision-maker.  *Id.*, section 9.  To request an exception to the

7    bar against the admission of previously available, but unsubmitted, evidence, a party must file a

8    petition with the Decision-maker showing why there is good cause for such admission.  *Id.*,

9    section 10.

10                                            32.

11

12        For the Administrative Conference to be conducted fairly and in conformity with the

13   University's procedures, the Decision-maker must not only give the complainant a reasonable

14   opportunity to present information, but the accused also must receive reasonable notice and an

15   opportunity to prepare and respond to the allegations.  *Id.*, section 14.

16                              **<u>Facts of John Doe's Case</u>**

17                                            33.

18

19        Jane Roe and John Doe met during the early fall term of 2015, and they sometimes engaged

20   in consensual sexual activity.  Around the middle of the fall term, however, John Doe wanted to be

21   in a serious relationship with someone, but Jane Roe wanted to have a more casual sexual

22   relationship, which was not appealing to John Doe.

23                                            34.

24

25        John Doe became highly concerned that Jane Roe had infected him with the herpes virus

26   because he believed she had cold sores.  John Doe is an extreme "germaphobe"—a fact to which

PAGE 9 -  COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 9 of 47**

1    several witnesses testified at the disciplinary hearing.  John Doe became so concerned that he had

2    contracted herpes, that he went to the student health facility and text messaged his mother about

3    his concerns.

4

5                                              35.

6           John Doe and Jane Roe started talking again during winter term of 2016.  Given John

7    Doe's belief that Jane Roe was infected with the herpes virus, however, he had no interest in

8    engaging with her sexually.

9                                              36.

10

11          On February 11, 2016, Jane Roe and John Doe met for coffee and then took a walk.  Jane

12   Roe's boyfriend had just broken up with her, although John Doe reported that they did not talk

13   about the breakup.  John Doe walked with Jane Roe after coffee because she had complained that

14   she could not smoke in her dorm room.  John Doe offered to show her some places he thought

15   that she might be able to smoke.

16                                             37.

17

18          On the night of February 12, 2016, Jane Roe contacted John Doe, who lived in the same

19   dorm, because she was highly intoxicated and afraid that, if she fell asleep, she might inhale her

20   own vomit.  She asked John Doe to watch over her, and John Doe agreed.  Jane Roe came to his

21   dorm room, and immediately collapsed onto his roommate's bed.  John Doe positioned Jane Roe

22   on her side to protect her from asphyxiation and removed her outer cardigan, in which her hand

23   had become entangled.

24   ///

25   ///

26

PAGE 10 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 10 of 47**

38.

John Doe then left his room to take a shower. After showering, he did some laundry and subsequently fell asleep on a couch in the downstairs lounge of his dorm.  Several witnesses corroborated this series of events.

39.

In the early morning of February 13, 2016, around 3:30 A.M., John Doe returned to his dorm room.  He fell asleep sitting up in his own bed, while Jane Roe continued to sleep in his roommate's bed.  When John Doe awoke, Jane Roe was gone.

40.

On February 18, 2016, the University notified John Doe that Jane Roe had filed with the University a sexual misconduct complaint against him.

41.

Jane Roe had filed her complaint on February 16, 2016, and two days later, the University issued an emergency-action housing change against John Doe, requiring him to move to another dorm.

42.

The University's Student Conduct Code provides that a preliminary hearing must be held within two business days of the emergency action.

43.

For some time after the emergency action, the University maintained that John Doe had been forced to change dorms not as an emergency action but pursuant to the contract provisions

PAGE 11 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1   in his housing agreement.  Ultimately, the University acknowledged that the move was pursuant

2   to its emergency action procedures.

3                                            44.

4

5          In violation of the University's policies and procedures, a preliminary hearing on the

6   emergency action was not afforded John Doe until April 15, 2016, approximately two months

7   after the University removed John Doe from his dorm.

8                                            45.

9

10         On April 18, 2016, defendant Sandy Weintraub, Director of Student Conduct and

11  Community Standards, sustained the emergency action requiring John Doe to change dorms.

12                                           46.

13         Due to the emergency action, John Doe was prohibited from visiting his friends or eating

14  in the Hamilton dorm complex.

15                                           47.

16         As a result of Jane Roe's accusations, the University initiated an investigation and

17  scheduled an Administrative Conference for May 17, 2016.

18                                           48.

19

20         Carol Millie was designated as the Decision-maker in the case.

21                                           49.

22         In the course of the investigation, Ms. Millie conducted documented interviews of Jane

23  Roe on February 23, 2016, and again on April 6, 2016.  As is discussed below, the record

24  suggests that Ms. Millie may have interviewed Jane Roe on other occasions without including

25  summaries of those interviews in the record, in violation of the University's SOPs.

26

PAGE 12 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 12 of 47**

50.

According to one of Jane Roe's first versions of the alleged assault, after she had passed out on the night of February 12, 2016, John Doe pulled her onto the floor and on top of him. He then allegedly sexually assaulted her by kissing her, putting his hands down her pants, and attempting to touch her vagina through her underwear.

51.

She also claimed that immediately after the assault, John Doe left the room to take a shower, and she quickly texted her ex-boyfriend: "Just for documentation, can you make it known I was almost raped tonight?"  The time stamp of that iMessage reflects that it was sent at 3:24 A.M.

52.

During the investigation period, John Doe provided Ms. Millie with the results of two polygraph examinations confirming that he had not engaged in sexual contact with Jane Roe on the night in question.

53.

Jane Roe also falsely reported that she and John Doe exchanged iMessages the morning after the assault, in which he apologized for the assault.  Jane Roe, however, could not produce the original iMessages.  Instead, she presented Ms. Millie with a screen shot of the iMessages, which Jane Roe claimed she had taken in case she later decided to file a complaint.

///

///

///

PAGE 13 -COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

54.

To explain why the original iMessages were no longer available for inspection, Jane Roe's counsel reported to Ms. Millie that, the morning after the assault, Jane Roe deleted John Doe's contact information from her phone and blocked all text messages from him.  Jane Roe's counsel claimed that, based on information that she and Jane Roe had learned through consulting with Jane Roe's cellular phone service provider, all previous text messages from John Doe were automatically deleted when Jane Roe blocked his contact information.

55.

As is further discussed below, John Doe presented to Ms. Millie expert testimony that iMessages are <u>not</u> automatically deleted when contacts are deleted and messages are blocked.  He presented further expert testimony explaining how a person may create a fake iMessage on her phone and then delete the fake message after producing a screen shot of it.

56.

Once an original text message is delated, there is no way to verify the authenticity of the screen shot.

57.

As is discussed in more detail below, when Jane Roe was confronted with John Doe's expert evidence, she changed her story about the deletion of the iMessages, claiming, through counsel, that she intentionally destroyed them at the time that she blocked John Doe's number and that she had reported as much to Ms. Millie during the investigation.  Despite Jane Roe's claims that she told Ms. Millie that she had intentionally deleted John Doe's iMessages, that version of the deletion story is not contained anywhere in Ms. Milllie's reports.

PAGE 14 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

58.

On the afternoon of February 13, 2016, Jane Roe met her ex-boyfriend for tea.  He was appropriately concerned for Jane Roe after the message he'd received at 3:24 A.M. the previous night.  He encouraged her to prosecute John Doe through the university system and proposed that she try to elicit an incriminating text message from John Doe or record a phone call with him establishing his guilt.  Despite the fact that her ex-boyfriend was encouraging her to obtain incriminating text messages from John Doe, Jane Roe failed to mention that she had already received such iMessages that very morning.  Nor did she mention that she had taken a screen shot of the iMessages for the sake of preserving evidence.

59.

John Doe passed a polygraph confirming as truthful that he and Jane Roe had not traded any iMessages concerning the alleged sexual assault.

60.

Jane Roe's accusations against John Doe were false and were intended to garner sympathy and attention from her ex-boyfriend.

61.

As noted above, John Doe passed a polygraph confirming that he had not engaged in any sexual contact with Ms. Roe on the evening of the alleged assault.

62.

Jane Roe's account of events significantly changed over time and conflicted with bystander testimony, which should have severely undermined her credibility.  Nonetheless, Ms.

PAGE 15 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 15 of 47**

1   Millie unreasonably excused all inconsistencies and drew all inferences—without exception—in

2   favor of Jane Roe.

3                                         63.

4

5          With regard to the walk Jane Roe had taken with John Doe on February 11, 2016, Jane

6   Roe first reported to Ms. Millie that John Doe had "hit on her" during the walk and made sexual

7   comments.  According to her roommate's testimony, Jane Roe also told her that John Doe had

8   tried to kiss her, hold her hand and "do stuff."

9                                         64.

10

11         But later, at the Administrative Conference, Jane Roe added dramatic details to her

12  narrative regarding her walk with John Doe.  During the hearing, she claimed for the first time

13  that, while on their walk, John Doe had grabbed and slapped her buttocks, hugged her from

14  behind—even picked her up and threw her over his shoulder. She also reported for the first time

15  that John Doe so frightened her on the walk that she had to run away from him.

16                                        65.

17

18         John Doe consistently denied that he made any sexual advances toward, or engaged in

19  any physical contact with, Jane Roe during the walk.

20                                        66.

21         Despite Jane Roe's shifting story about what had happened on the walk, Ms. Millie

22  ultimately determined that Jane Roe's version of events was more credible than John Doe's.

23  She then relied on her factual findings regarding the walk to support her ultimate finding that

24  John Doe sexually assaulted Jane Roe the following evening.

25

26  ///

PAGE 16 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 16 of 47**

67.

Additionally, Ms. Millie arbitrarily found John Doe's testimony about the walk to be not credible because, she reasoned, if he feared sexual contact with Jane Roe due to his germaphobia, he would not have gone on a walk or have had coffee with her. Ms. Millie simply overlooked the scientific fact that one cannot contract herpes by walking or having coffee with another person. Thus, it was unreasonable to infer from John Doe's willingness to have coffee and go for a walk with Jane Roe that his testimony about his sexual aversion to Jane Roe lacked credibility.

68.

Further, it is unreasonable to credit as true an ever-shifting and increasingly elaborate story of the walk, as Ms. Millie did, merely because Jane Roe told her roommate that John Doe had hit on her during the walk. Jane Roe's falsely confiding in her roommate was motivated by her need for attention and her desire to inflame her ex-boyfriend's jealously.

69.

With regard to the alleged sexual assault, Jane Roe's testimony at the hearing also included new, sensational details. She claimed for the first time that, at the time of the assault, John Doe was slapping her awake, asking her "how she wanted it," and interrogating her as to how many sexual partners she had had.

70.

But, from the time that Jane Roe entered his dorm room until well past 3:24 A.M. (when Jane Roe sent the text to her ex-boyfriend falsely accusing John Doe), the door to John Doe's room had been left partially open. In the dorm room immediately opposite John Doe's, two witnesses were playing video games with the sound turned low and the door open wide. The

PAGE 17 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 17 of 47**

1   witnesses testified that they would have been able to hear any noises coming from John Doe's

2   room.  They heard nothing: no slapping, no questions, no protestations, no yelling.

3                                          71.

4

5        Other aspects of Jane Roe's story conflicted with those witnesses' testimony.  For

6   instance, Jane Roe also testified that John Doe had left the room to take a shower immediately

7   after the alleged assault (or so she assumed because she heard a sound that she considered to be a

8   shower running).  However, one witness testified at the hearing that John Doe had left his dorm

9   room to take a shower <u>hours</u> before 3:24 A.M., which should have further called into question

10  Jane Roe's credibility and the accuracy of her testimony.

11

12                                         72.

13       Ms. Millie, however, unreasonably dispensed with all witness testimony that undermined

14  Jane Roe's chronology by finding that the assault simply must have occurred much earlier than

15  Jane Roe remembered.  Ms. Millie premised her finding on an undisclosed "expert" opinion

16  regarding trauma's effect on a trauma victim's memory—evidence that was <u>not</u> in the record.

17  Based on this undisclosed and unqualified "expert" evidence, Ms. Millie unreasonably concluded

18  without support that Jane Roe's trauma must have left her confused about the time.  Ms. Millie

19  thereby side-stepped the obvious inconsistency between Jane Roe's and the witnesses'

20  testimony—which was the centerpiece of John Doe's defense.

21

22                                         73.

23       Ms. Millie used the undisclosed expert opinion to find that Ms. Roe's stories shifted

24  because she suffered from trauma-induced memory problems and that the evidence that Jane Roe

25

26

PAGE 18 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 18 of 47**

1    had suffered a trauma was that her stories shifted.  Ms. Millie's reasoning was circular and

2    outcome-driven.

3                                         74.

4

5          Based on her circular reasoning, Ms. Millie found that the sexual assault did not occur

6    immediately before 3:24 A.M.—even though that is the only time in the record that is tethered to

7    the evidence.  3:24 A.M. is the time when Jane Roe sent the iMessage to her ex-boyfriend, and in

8    every version of the facts related by Jane Roe, she reported that the assault occurred immediately

9    before she sent that text.

10                                        75.

11

12         In other words, Ms. Millie created a Catch-22 situation in which John Doe could not

13   possibly establish his innocence: if his accuser's testimony was consistent, Ms. Millie would find

14   her credible and determine that the alleged assault occurred.  But if his accuser's testimony was

15   inconsistent, Ms. Millie would attribute the inconsistency to trauma-induced memory issues, the

16   existence of which, according to her faulty analysis, would prove that the alleged assault

17   occurred.  Thus, the outcome was predetermined.

18

19                                        76.

20         Title IX training instructs decision-makers that inconsistencies in an accuser's testimony

21   may be used as evidence that the accuser has suffered trauma.  Thus, the training provided to

22   decision-makers led to the unfair and arbitrary conclusion in this case that Jane Roe's

23   inconsistencies proved her version of events rather than indicated her lack of credibility.  Such a

24   backward approach to determining credibility violated John Doe's due process rights because he

25

26

PAGE 19 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1    was effectively deprived the right to confront his accuser, to challenge her credibility through

2    meaningful cross-examination, and to present a defense.

3                                          77.

4

5        On appeal to the University Appeals Board, John Roe submitted an expert report from Dr.

6    Daniel Reisberg, a highly qualified professor of psychology at Reed College who testified that

7    the assumptions underlying Ms. Millie's findings regarding trauma and its effects on memory

8    were not scientifically supportable.  Had John Doe received notice before Ms. Millie's decision

9    that she intended to rely on pseudo-science, extraneous to the record, to support her conclusion

10   that Jane Roe's inconsistencies were evidence of trauma, he would have introduced Dr.

11   Reisberg's report into the record before the hearing and decision. Instead, John Doe was provided

12   no notice that Ms. Millie would premise her credibility determinations on such junk science.

13

14                                         78.

15       The University Appeals Board, without even mentioning Dr. Reisberg's report, affirmed

16   John Doe's suspension based on Ms. Millie's decision, including her credibility determinations.

17                                         79.

18

19       Moreover, Ms. Millie overlooked Jane Roe's (or her counsel's) inconsistencies regarding

20   how the purportedly incriminating iMessages were deleted from Jane Roe's phone.  Jane Roe's

21   counsel first claimed that "we" contacted T-Mobile and learned that when Jane Roe deleted John

22   Doe's contact information from her phone and blocked all future messages from him, that

23   process automatically deleted the incriminating iMessages.  Later, after John Doe presented

24   expert evidence that iMessages are not automatically deleted under those circumstances, Jane

25   Roe's counsel explained that she had been mistaken: Jane Roe intentionally deleted the

26

PAGE 20 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

Exhibit A
Page 20 of 47

1 iMessages when she deleted John Doe's information and blocked his messages. Jane Roe's

2 counsel also claimed that Jane Roe had reported to Ms. Millie previously that she had

3 intentionally deleted the messages. That information, however, does not appear in Ms. Millie's

4 summary of the investigation. Thus, either Jane Roe's version of how the iMessages were

5 deleted shifted after expert evidence showed it to be false (and Ms. Millie's credibility

6 determination was therefore unreasonable), or Ms. Millie failed to provide John Doe with all of

7 the evidence in the record before the hearing, as is required by the University's policies and

8 procedures.

9

10                                       80.

11      In violation of his due process rights and the University's policies and procedures, John

12 Doe was not provided, before the hearing, with the exhibit in which Jane Roe's attorney

13 attempted to explain her erroneous prior statements regarding Jane Roe's deletion of the

14 iMessages allegedly sent to her by John Doe.

15

16                                       81.

17      John Doe therefore had no time to prepare a response to the convenient and wholesale

18 reversal of Jane Roe's testimony regarding the iMessages' deletion.

19

20                                       82.

21      John Doe, through his attorneys, demanded he be allowed to question Jane Roe's attorney

22 regarding Jane Roe's new explanation for the iMessages' deletion to determine when Jane Roe

23 first informed her attorney that she had intentionally deleted the messages (e.g., from the outset

24 of the representation or only after John Doe had presented expert evidence that Jane Roe's first

25 explanation about the destruction of the messages was false).

26

PAGE 21 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 21 of 47**

83.

Ms. Millie did not reconvene the conference to allow John Doe to directly cross-examine Jane Roe's attorney, but allowed him to pose written questions to the attorney after the Administrative Conference.  John Doe submitted questions to Ms. Millie, who, having approved them as relevant, forwarded them to Jane Roe's attorney to be answered within three days.

84.

When Jane Roe's attorney, however, refused to answer the questions that Ms. Millie had determined were relevant and appropriate, Ms. Millie disregarded and refused to enforce her ruling requiring answers to those questions.  She drew no adverse inference regarding Jane Roe's credibility and relied throughout her opinion on her finding that the iMessages had been exchanged between John Doe and Jane Roe.

85.

Additionally, Ms. Millie unreasonably ignored the fact that, although Jane Roe's ex-boyfriend proposed that Jane Roe should elicit from John Doe an incriminating text to prove her allegations, Jane Roe said nothing to her ex-boyfriend about the incriminating iMessages that she had allegedly received just hours earlier.  Instead, Ms. Millie arbitrarily credited Jane Roe's illogical explanation that she had forgotten about the incriminating iMessages because her ex-boyfriend alternatively proposed recording a telephone call with John Doe.

86.

Ms. Millie also deprived John Doe of his right to present habit evidence that would have shown that he routinely assists others who are under the influence of alcohol and cannot take care of themselves.  Ms. Millie incorrectly determined that John Doe's proffered evidence was

PAGE 22 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 22 of 47**

1     character evidence, the admission of which the SOPs prohibit.  The failure to allow such

2     evidence prejudiced John Doe because Ms. Millie discounted his testimony that he would not

3     have sexually engaged with a person who might have vomited on him, given his germaphobia.

4

5     Ms. Millie found that, had he truly been so disgusted by the prospect of Jane Roe vomiting on

6     him, he would not have allowed Jane Roe into his dorm room.  But the habit evidence would

7     have established that, whatever his revulsion to sexually engaging with a person who is

8     intoxicated to the point of vomiting, that aversion would not have prevented him from helping

9     that person, as he had routinely done so for others in the past.

10                                                87.

11

12         Defendant Millie unfairly allowed Jane Roe to introduce evidence into the record long

13     after the hearing's conclusion.  On May 27, 2016—ten days after the Administrative

14     Conference—Jane Roe claimed to have remembered material evidence that she wished to add to

15     the record.  Specifically, Jane Roe stated that she had suddenly recalled a Facebook message that

16     she claimed John Doe sent to her the day after the alleged sexual assault. The message read: "Can

17     I ask, are you going to report me?"

18

19                                              88.

20         Hearings officer Millie added that evidence to the record without providing any notice to

21     John Doe.

22     ///

23     ///

24     ///

25     ///

26

PAGE 23 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 23 of 47**

89.

The University's Sexual Misconduct Standard Operating Procedures specifically prohibit submission of new evidence "that was available and could have been provided but was not previously provided to the Decision-maker during the fact-gathering investigation."

90.

Nonetheless, hearings officer Millie kept the official record open to allow Jane Roe to submit the additional evidence even though it had allegedly been available as of February 13, 2016, before Jane Roe ever filed a complaint against John Doe.  Jane Roe never established good cause as to why she did not provide this evidence during the fact-gathering investigation beyond offering the incredible explanation that she had forgotten about it.

91.

In response, John Doe submitted expert evidence regarding a person's ability to create a misleading Facebook account using another person's profile picture, from which damaging messages may be sent.  He also submitted the results of a polygraph examination confirming that he had never sent such a Facebook message to Jane Roe.

92.

In violation of the University's procedures and John Doe's due process rights, Ms. Millie relied on evidence to which John Doe was given no opportunity to respond, to find that he had sent the Facebook message. Before issuing her decision, Ms. Millie admitted to the record the summary of University of Oregon Police Department Officer Royce Meyers containing his analysis of the Facebook message allegedly sent by John Doe.  Officer Meyers's summary

PAGE 24 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

Exhibit A
Page 24 of 47

1  reflects his understanding of what digital information is captured by Facebook's servers

2  concerning a person's account and sent messages.

3                                        93.

4

5        John Doe was provided no notice that Ms. Millie would admit Officer Meyers's summary

6  to the record and was afforded no opportunity to respond before Ms. Millie issued her decision,

7  despite the fact that the Student Conduct Code provides that an accused student has a right to

8  respond to all information provided to the decision-maker.

9                                        94.

10

11       Ms. Millie unfairly noted in her decision that she found it suspicious that John Doe had

12 conducted a factory reset of his computer on the same day that Jane Roe re-discovered the

13 Facebook message.  John Doe reset his computer on May 27, 2016, because his family's

14 computers had been infected with malware and he was concerned that his computer had been

15 similarly infected.  Ms. Millie was aware, however, that Jane Roe did not seek to have the

16 Facebook message admitted until May 31, 2016.  Thus, John Doe could have had no knowledge

17 that a purported Facebook message would be at issue until days after he had completed the

18 factory reset.

19

20                                       95.

21       Additionally, Ms. Millie stated in her decision that she considered the record both with

22 and without the Facebook message and that her determination was unaffected by the information.

23 But Ms. Millie relied on the Facebook message throughout her decision and listed it among the

24 corroborating evidence supporting her decision.

25 ///

26

PAGE 25 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 25 of 47**

96.

Significantly, Ms. Millie disregarded, without explanation, the fact that John Doe passed four polygraph tests establishing as truthful his denial of having had any sexual contact with Jane Roe on the night in question. As noted above, John Doe passed two polygraph examinations establishing the truthfulness of his denial of having sexually assaulted Jane Roe. He subsequently passed a polygraph examination establishing that he had never sent Jane Roe the relevant iMessages regarding the alleged sexual assault. Finally, he passed a polygraph examination establishing that he never sent Jane Roe the Facebook message at issue.

97.

Under Oregon law, the results of polygraph examinations are admissible in administrative proceedings. *See Wiggett v. Oregon State Penitentiary*, 85 Or App 635 (1987) (holding that a polygraph examination is admissible in prison disciplinary proceeding); *Waisanen v. Clatskanie Sch. Dist.*, 220 Or. App. 563, 575 (2009) (relying on *Wiggett* to uphold the admission of polygraph evidence in school teacher's dismissal board hearing); *State v. Hammond*, 218 Or App 574, 576 (2008) (polygraph evidence in probation revocation hearing).

98.

Moreover, Ms. Millie dismissed, without explanation, compelling testimony from the administering polygrapher who stated that passing three polygraphs was unprecedented in her experience. The polygrapher also explained that while there may be concerns about false positives (that is, results inaccurately reflecting that a person is lying), polygraphs are highly reliable when the results reflect truthfulness.

///

PAGE 26 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 26 of 47**

99.

The University's decision to suspend John Doe therefore followed a biased investigation and hearing – both of which were conducted by Ms. Millie.  Ms. Millie, acted simultaneously as investigator, prosecutor, judge, and jury.

100.

Ms. Millie unfairly drew every inference in the complainant's favor, took every opportunity to make adverse credibility determinations against John Doe, excused the complainant's inconsistencies (sometimes by resorting to junk science), discounted without explanation John Doe's having passed <u>four</u> polygraph tests, and ultimately issued an arbitrary decision against the overwhelming weight of the evidence.

101.

Indeed, the University's perceived need to respond to public criticism of colleges' mishandling of claims of sexual assault created an environment that made it impossible for the University's administration to impartially determine the facts.

102.

The University—concerned about the recent national and local attention focusing on the treatment of sexual assault complaints on college campuses—responded to Jane Roe's accusations through arbitrary, discriminatory and illegal actions designed to reach a predetermined outcome, namely, John Doe's suspension from the University.

103.

The University's gender-based bias is apparent in Ms. Millie's willingness to draw all inferences against John Doe, to dismiss all evidence presented by John Doe (whatever its

PAGE 27 -COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

Exhibit A
Page 27 of 47

1  strength), to overlook all inconsistencies in Jane Roe's testimony, and to accept all of Jane Roe's

2  shifting explanations for destroying evidence or conveniently remembering incriminating

3  evidence months after it was available.

4

5                                     104.

6      The University's gender-bias is also apparent in the discriminatory and selective way it

7  applies or disregards its policies and procedures to disfavor male accused students.

8                                     105.

9      For instance, despite the University's insistence on strict adherence to its required time

10 frames when it favored the female complainant, the University failed to similarly observe the

11 required time limits for issuing the Appeals Board's decision, much to the detriment of John

12 Doe.

13

14                                     106.

15     John Doe's attorney requested that the Administrative Conference be set a few weeks

16 beyond the usual timeframe set forth in the SOPs because she would be out of the country on a

17 long-planned trip.  Ms. Millie refused to grant the extension, citing concerns that the delay would

18 negatively impact the complainant, including her access to education.  But when it came to

19 deciding John Doe's appeal, the University failed to render its decision within the required time,

20 made no effort to notify John Doe that its decision would be delayed (until after John Doe's

21 attorney contacted the Board), and failed to state good cause for the delay—all in violation of its

22 procedures.  The Appeals Board's decision was due on August 19, 2016.  The Appeals Board

23 issued its conclusory decision almost three weeks late, on September 7, 2016—allowing John

24 Doe little time to challenge the appeal before the beginning of the fall term.

25

26

PAGE 28 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 28 of 47**

1       107.

2       Gender-bias aside, the University conducted an investigation and hearing that were

3  procedurally unfair.

4       108.

5       As stated above, the University and Ms. Millie, failed to observe the University's policies

6  requiring that both parties to the disciplinary action be allowed to review the entire record before

7

8  the disciplinary hearing and decision.

9       109.

10      The University and Ms. Millie found that John Doe committed a sexual assault by relying

11 on evidence outside the record, to which John Doe had no opportunity to respond.

12

13      110.

14      During the hearing, Jane Roe was allowed to testify from a separate room, which

15 prevented John Doe from observing her demeanor as she testified against him. Consequently, the

16 University violated its rule that both parties should be provided the full record and violated John

17 Doe's due process right to confront his accuser.  Non-verbal testimony and demeanor is

18 particularly important to determining credibility, which is crucial in "he said, she said" cases.

19

20      111.

21      Hearings officer Millie, however, witnessed and relied on Jane Roe's non-verbal

22 testimony and observed the demeanor of all witnesses.

23 ///

24 ///

25 ///

26

PAGE 29 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 29 of 47**

112.

Although the audio of the hearing testimony was recorded, Jane Roe's non-verbal testimony was not preserved on a video recording.  Nor was there a live video feed of the testimony that John Doe could watch during the hearing.

113.

John Doe was not allowed to cross-examine Jane Roe or any of her witnesses, thereby denying him any meaningful opportunity to confront the witnesses against him.  All questions posed to the complainant or her witnesses were required to be submitted to and posed by Ms. Millie.

114.

Again, John Doe could not observe his accuser and, consequently, could not assess her facial expressions or other non-verbal responses to the questions posed.  He therefore could not challenge such responses with relevant cross examination.  Although the SOPs allow testimony to be given in separate rooms, it was procedurally unfair for Ms. Millie to have been in the same room as the complainant without John Doe being afforded access to the same record.

115.

For the reasons stated above, the University deprived John Doe of basic due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution, by Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and its implementing regulations, and by the University's own stated policies and procedures.

*///*

PAGE 30 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 30 of 47**

116.

As a result of the University's illegal conduct, John Doe's academic performance, career prospects, earning potential, and reputation have been severely and irreparably damaged.  The significant time, effort, and expense that John Doe devoted to obtaining a college education in a timely manner and to fostering relationships in the University community have been destroyed.

117.

As a result of the University's unlawful actions, John Doe's reputation has been severely damaged and his academic performance has suffered greatly.

118.

As a result of the University's unlawful actions, John Doe's ability to pursue an undergraduate degree through his continued enrollment has also been compromised.

119.

As a result of the University's unlawful actions, John Doe has suffered extreme emotional distress.

120.

John Doe therefore brings this action to obtain relief based on the University's clear violations of the United States Constitution, Title IX, and its own policies.

121.

John Doe is entitled to have the disciplinary decision vacated, to an expungement of any and all records related to the disciplinary process, to an award of damages for the University's and the individual defendants' injurious actions, and to his reasonable attorneys' fees and costs incurred in pursuing this action.

PAGE 31 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 31 of 47**

122.

Without appropriate redress, the unfair and illegal outcome of the disciplinary hearing will continue to cause damage to John Doe.

## FIRST CLAIM FOR RELIEF

### (Petition for Writ of Review – against the University)

123.

John Doe incorporates and realleges paragraphs 1 through 122 as if fully set forth herein.

124.

For the reasons stated above, this Court should issue a writ of review because a substantial interest of John Doe has been injured, and the University, in the exercise of judicial or quasi-judicial functions, has, in University case number 00425-001-2016, failed to follow the procedure applicable to the matter before it, rendered a decision that is unconstitutional, and rendered a decision that is not supported by substantial evidence in the whole record.

125.

The defendants deprived John Doe of his due process rights under the Fourteenth Amendment to the United States Constitution.

126.

As a student at a public university, John Doe has a property interest in his continued enrollment at the University of Oregon and a liberty interest in his good reputation, as well as his status as a student in good standing.  Because of the unfair procedures and the arbitrary and capricious adjudication of the sexual misconduct allegations and the emergency-action housing

PAGE 32 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

change, he has suffered the stigma of being labelled a sexual assailant and has been deprived of

his ability to pursue his education without significant delay.

127.

The actions alleged above violated John Doe's right to due process, specifically:

    a.  John Doe's removal from his dorm without appropriate notice or an opportunity for a hearing;

    b.  Hearing officer Millie's combined role of investigator, fact-finder, and decision-maker;

    c.  Ms. Millie's failure to provide John Doe any opportunity to cross-examine the complainant or her witnesses;

    d.  Ms. Millie's allowing the complainant to testify during the hearing in a room separate from John Doe, which prevented him from confronting his accuser and from observing her demeanor and/or non-verbal testimony;

    e.  Ms. Millie's allowing additional evidence into the record after the hearing's conclusion, without any valid demonstration of good cause;

    f.  Ms. Millie's failure to notify John Doe of the complainant's additional, newly submitted evidence before admitting it into the record;

    g.  Ms. Millie's failure to provide John Doe with the entire record before the hearing and/or decision;

    h.  Ms. Millie's reliance on evidence outside the record in reaching her decision, including an unqualified expert opinion and Officer Meyers's summary of his analysis of Facebook practices;

PAGE 33 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

i.  Ms. Millie's apparent bias against John Doe resulting in an unfair investigation and adjudication of the complaint; and

j.  Ms. Millie's exclusion of relevant habit evidence establishing that John Doe routinely helped others when they were intoxicated, which would have explained why John Doe's helping Jane Roe was not motivated by ulterior motives.  It also would have explained why he helped her, even though he was repulsed by the prospect of her potentially vomiting on him, a prospect which, given his germaphobia, made it highly unlikely that he would attempt to sexually engage with her;

k.  Although Ms. Millie correctly found that the assault did not occur immediately before 3:24 A.M., she unreasonably failed to infer from that fact that the assault did not occur at all.  Jane Roe's sending at text to her ex-boyfriend at 3:24 A.M. was the only event tied to a verifiable time, and Ms. Roe consistently testified that the sexual assault occurred immediately before she sent the text.  The evidence presented by John Doe proved that no assault could have occurred at 3:24 A.M. as alleged by Jane Roe.  But Ms. Millie, disregarding that significant inconsistency in Jane Roe's testimony, arbitrarily determined that "a purely chronological assessment of credibility would be a faulty assessment of credibility because a reporting party's information and actions may be fragmented and not in chronological order due to their trauma."  Ms. Millie then arbitrarily and unfairly introduced her own, made-up version of the facts and chronology to support her

PAGE 34 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 34 of 47**

1    theory of guilt, while ignoring the only consistent factual detail in Jane Roe's

2    testimony: the alleged time of the assault.

3                                    128.

4    The University's actions were taken on the basis of John Doe's gender and violated his

5    right to Equal Protection under the Fourteenth Amendment.

6

7                                    129.

8    The University violated its own policies and procedures through Ms. Millie's unfair

9    conduct of the investigation and hearing, including but not limited to:

10       a.  Ms. Millie's reliance on evidence outside the record in reaching her decision,

11           including an unqualified expert opinion and Officer Meyers's summary of his

12           analysis of Facebook practices;

13

14       b.  Ms. Millie's admitting additional evidence (the Facebook message and Officer

15           Meyers's summary of his analysis of Facebook practices) into the record after the

16           Administrative Conference without a showing of good cause;

17

18       c.  Ms. Millie's failing to allow John Doe access to the full record, including

19           information from additional, undocumented interviews of Jane Roe and the

20           demeanor and non-verbal responses of Jane Roe at the hearing;

21       d.  Ms. Millie's failing to allow John Doe access to the full record before the

22           hearing—specifically, the newly minted and inconsistent explanation for Jane

23           Roe's destruction of the iMessages submitted by Jane Roe's counsel; and

24

25       e.  John Doe's forced removal from his dorm without a hearing within two business

26           days of his removal.

PAGE 35 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

130.

The University's decision was not based on substantial evidence in the whole record because:

    a.  Ms. Millie based many of her findings on illogical, arbitrary inferences;

    b.  Ms. Millie, without explanation, disregarded compelling evidence submitted by John Doe, including overwhelming evidence of his innocence in the form of four polygraph examinations;

    c.  Ms. Millie drew every inference in Jane Roe's favor, made arbitrary credibility determinations, threw suspicion on John Doe based on impossible conclusions, explained away the inconsistencies between Jane Roe's testimony and bystander witness testimony, and overlooked all inconsistencies in Jane Roe's testimony;

    d.  When fairly and impartially weighed, the evidence in the whole record does not support Ms. Millie's determination that it was more likely than not that John Doe committed the misconduct alleged.

131.

Moreover, the Appeals Board's affirmance of Ms. Millie's decision, without additional analysis, merely perpetuated the errors and procedural deficiencies alleged above.

132.

The Appeals Board's failure to address at all Dr. Reisberg's expert report challenging Ms. Millie's use of extraneous, unscientific evidence regarding trauma and memory compounded the initial due process violation and the University's failure to follow its policies and procedures.

PAGE 36 -COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

Exhibit A
Page 36 of 47

133.

John Doe suffered monetary damages, loss of educational opportunities, and other direct and consequential damages.

134.

Because the University has injured the substantial rights of John Doe in a number of ways, the University should be ordered to desist from further proceedings in the matter to be reviewed, including the enforcement of any sanctions, in order to allow John Doe to continue his education during the pendency of this action.

135.

Petitioner has no other plain, speedy, or adequate remedy than the review prayed for in this petition.

136.

John Doe also requests a stay of the enforcement of the sanctions imposed by the University of Oregon during the pendency of this petition.

**SECOND CLAIM FOR RELIEF**

**(Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq.; against all Defendants)**

137.

John Doe incorporates and realleges paragraphs 1 through 122 as if set forth fully herein.

///

///

///

///

PAGE 37 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 37 of 47**

1

138.

2

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX")

3

provides, in relevant part, that:

4

> No person in the United States shall, on the basis of sex, be
> excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any education program or
> activity receiving Federal financial assistance.

5

6

7

139.

8

9

Upon information and belief, the University of Oregon receives federal funding through

10

various means including, without limitation, student loans provided to University of Oregon

11

students directly by the federal government and through other funds furnished by the federal

12

government.

13

140.

14

15

Regulations implementing Title IX require that schools "adopt and publish grievance

16

procedures providing for the prompt and equitable resolution of student . . . complaints alleging

17

any action which would be prohibited by" Title IX or its regulations.  To assist schools with

18

implementing those regulations, the Office of Civil Rights ("OCR") of the United States

19

Department of Education has identified a number of factors to be used in determining whether a

20

school's procedures satisfy the "prompt and equitable" requirements of the regulations.  The

21

procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of

22

the complainant," but must also "accord[] due process to both parties involved . . . ."  Pursuant to

23

the Revised Sexual Harassment Guidance, "due process" must include, among other things,

24

25

26

PAGE 38 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1  "[a]dequate, reliable, and impartial investigation of complaints, including the opportunity to

2  present witnesses and other evidence."

3                                    141.

4

5          The individual Defendants deprived John Doe, on the basis of his sex, of his Title IX

6  rights to due process and equal protection through the improper administration, and/or the

7  existence, in its current state, of its Student Conduct Code and Sexual Misconduct Standard

8  Operating Procedures and other applicable policies and procedures.

9                        **Count 1 - Selective Enforcement**

10                                    142.

11

12         The University of Oregon, in violation of Title IX, discriminated against John Doe based

13  on his sex and, as a result, John Doe has been seriously and irreparably damaged.  The

14  University's decision to initiate the proceeding, and its subsequent conduct of the proceedings,

15  were affected by John Doe's gender.

16                                    143.

17

18         The University of Oregon discriminatorily investigated, charged, and disciplined John

19  Doe.

20                                    144.

21

22         As a direct and proximate consequence of the University of Oregon's Title IX violation,

23  John Doe has sustained significant damages including, but not limited to, being delayed in his

24  educational pursuits, having an academic and/or disciplinary record(s) that improperly reflect that

25  he was found to have committed sexual misconduct and/or other related offenses, and extreme

26  emotional distress.

PAGE 39 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 39 of 47**

145.

This black mark on John Doe's record inhibits or destroys his ability to enroll in a similarly ranked college or university and stigmatizes John Doe, as he now has a record that notes findings of guilt for serious misconduct that he did not commit.

146.

John Doe has also suffered monetary damages, loss of educational opportunities, and other direct and consequential damages.

147.

John Doe is entitled to recover damages for the University of Oregon's and the individual defendants' Title IX violations, in an amount to be determined at trial, plus prejudgment interest, reasonable attorneys' fees, expenses, costs and disbursements, and appropriate equitable relief.

**Count 2 - Erroneous Outcome from an Unfair Proceeding**

148.

In violation of Title IX, the University of Oregon discriminated against John Doe based solely on his gender and, as a result, seriously and irreparably damaged him. It discriminated against him by failing to comply with its own procedures and by failing to comply with the requirements of Title IX, in order to reach a pre-ordained result, due to his gender and based on gender stereotypes.

149.

The University of Oregon created an environment in which John Doe, an accused male student, was denied due process so as to be almost assured a finding of guilt. Such a biased

PAGE 40 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A**
**Page 40 of 47**

1   process deprived John Doe, as a male student, of educational opportunities on the basis of

2   gender.

3                                              150.

4           The University of Oregon conducted its "investigation" and subsequent hearing

5
6   in a manner that was biased against John Doe, based on his gender.  From the beginning, the

7   investigation and adjudication process was tilted in favor of Jane Roe, the female accuser,

8   because of her gender.  The hearing officer/investigator, Ms. Millie, largely accepted Jane Roe's

9   statements at face value and granted her the presumption of truth because she is female.  John

10  Doe did not have an equal opportunity to present evidence or to access the record, based on his

11
12  gender.

13                                             151.

14          The University and its agents responded to Jane Roe's accusations with arbitrary,

15  capricious, discriminatory, and gender-based actions—including requiring John Doe to change

16  dorms without notice or an opportunity to be heard before the forced relocation.  Further, the

17
    preliminary hearing within two business days, as guaranteed by the Student Code of Conduct,

18
19  was delayed for approximately two months.

20                                             152.

21          The University repeatedly failed to adhere to its stated policies and procedures.

22                                             153.

23
    The University contributed to an erroneous outcome through the following:

24
25          a. Failing to provide adequate policies and procedures for the investigation and

26          adjudication of complaints of alleged sexual misconduct;

PAGE 41 -COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

Exhibit A
Page 41 of 47

b. Violating the University's policy against gender/sex-based discrimination by establishing a de facto presumption, on the basis of gender stereotypes, that John Doe committed sexual assault;

c. Failing to allow John Doe to present a defense by denying him the opportunity to cross-examine or confront witnesses and by failing to allow him full access to the record before and during the hearing;

d. Failing to provide John Doe with basic due process, including the opportunity to confront Jane Roe with questions to test her veracity and credibility and to explore her motivations for her accusations;

e. Rendering an adverse decision against John Doe without sufficient evidence to support such a decision;

f. Relying on undisclosed expert opinion to render an adverse decision against John Doe; and

g. Failing to allow John Doe an opportunity to respond to Officer Meyers's report, which was admitted to the record after the hearing and disclosed only after Ms. Millie's decision was issued.

                                    154.

The University's gender bias affected the outcome of the proceeding.

                                    155.

As a direct and proximate consequence of the University's Title IX violation, John Doe has sustained significant damages including, but not limited to, having an academic and/or

PAGE 42 - COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1   disciplinary record(s) that improperly reflects that he was found to have committed sexual

2   misconduct and/or other related offenses.

3                                                        156.

4

5       John Doe's record thereby inhibits or destroys his ability to enroll in a similarly ranked

6   college or university and stigmatizes John Doe because he now has a record that reflects findings

7   of guilt for serious misconduct that he did not commit.

8                                                        157.

9        John Doe has also suffered monetary damages, loss of educational opportunities, and

10  other direct and consequential damages.

11

12                                                       158.

13      John Doe is entitled to recover damages for the University's and individual defendants'

14  Title IX violations, in an amount to be determined at trial, plus prejudgment interest, reasonable

15  attorneys' fees, expenses, costs and disbursements, and appropriate equitable relief, as directed

16  by the Court.

17

18                            **THIRD CLAIM FOR RELIEF**

19           **(Denial of Due Process – against the individual defendants)**

20                                                       159.

21      John Doe incorporates and realleges paragraphs 1 through 122 as if fully set forth herein.

22                                                       160.

23      The individual defendants deprived John Doe of his due process rights under the

24  Fourteenth Amendment to the United States Constitution.

25

26  ///

PAGE 43 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

161.

As a student at a public university, John Doe has a property interest in his continued enrollment at the University of Oregon and a liberty interest in his good reputation, as well as his status as a student in good standing.  Because of the unfair procedures and the arbitrary and capricious adjudication of the sexual misconduct allegations and the emergency-action housing change, he has suffered the stigma of being labelled a sexual assailant and has been deprived of his ability to pursue his education without significant delay.

162.

The actions alleged above violated John Doe's right to due process.

163.

John Doe has also suffered monetary damages, loss of educational opportunities, and other direct and consequential damages.

164.

The actions of the individual Defendants were taken under the color of state law.

165.

John Doe brings this claim pursuant to 42 U.S.C. § 1983.

166.

John Doe also seeks reasonable attorneys' fees under 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**

**(Violation of Equal Protection – against individual Defendants)**

167.

John Doe incorporates and realleges paragraphs 1 through 122 as if set forth fully herein.

PAGE 44 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1

2          168.

3    The individual defendants' actions were taken on the basis of John Doe's gender and

violated his right to Equal Protection under the Fourteenth Amendment.

4

5          169.

6    The actions of these Defendants were taken under the color of state law.

7          170.

8    John Doe brings this claim pursuant to 42 U.S.C. § 1983.

9          171.

10   John Doe also seeks reasonable attorneys' fees under 42 U.S.C. § 1988.

11

12                              **PRAYER FOR RELIEF**

13   WHEREFORE, John Doe requests that the Court order its clerk to issue a writ of review

14   to Respondent-Defendant University of Oregon, commanding University of Oregon to (a) desist

15   from further proceedings in this matter, including the enforcement of any sanctions; and (b) to

16   return the writ to this Court with a certified copy of the record in this matter for review by the

17   Court. Upon that review, John Doe requests that the Court reverse the decision of Respondent-

18   Defendant University of Oregon.

19

20   John Doe further demands that judgment be entered in his favor and against Defendants,

21   for the following relief:

22   (a) Order the University of Oregon to correct John Doe's academic and disciplinary

23   record to remove any findings issued by the University of Oregon with respect to the

24   charges leveled against him;

25

26

PAGE 45 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

1    (b) Order the University of Oregon immediately to allow John Doe to re-enroll at the

2    University of Oregon;

3    (c) Award John Doe compensatory damages in an amount to be proven at trial, in

4    addition to prejudgment interest, punitive damages, reasonable attorneys' fees, expenses

5    and costs; and

6

7    (d) Such other relief that the Court deems just and proper under the circumstances.

8

9    DATED this 15th day of September, 2016.

10

11

12                                         JANET HOFFMAN & ASSOCIATES

13                                          /s/ Janet Hoffman
                                            JANET HOFFMAN, OSB No. 781145
14                                          Of Attorneys for John Doe
                                            1000 SW Broadway, Suite 1500
15                                          Portland, OR 97205
                                            Phone: (503) 222-1125
16                                          Fax: (503) 222- 7589
                                            E-mail: janet@jhoffman.com
17

18

19

20

21

22

23

24

25

26

PAGE 46 -COMPLAINT; PETITION FOR WRIT OF REVIEW

**JANET HOFFMAN & ASSOCIATES**
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 46 of 47**

1

### ORS 34.030 ATTORNEY CERTIFICATION

2

I hereby certify that I have examined the record of the proceedings in this matter to the

3

extent that it is now available to me, and have examined the decisions and determinations made

4

in it, and that these decisions and determinations are erroneous as alleged in this petition.

5

6                                          /s/ Janet Hoffman
                                      JANET HOFFMAN, OSB No. 781145

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 47 - COMPLAINT; PETITION FOR WRIT OF REVIEW

JANET HOFFMAN & ASSOCIATES
1000 SW Broadway
Suite 1500
Portland, OR 97205
(503) 222-1125

**Exhibit A
Page 47 of 47**