**Amanda M. Walkup, OSB 934508**
awalkup@hershnerhunter.com
**Lillian Marshall-Bass, OSB 161811**
lmarshall-bass@hershnerhunter.com
Hershner Hunter, LLP
180 East 11th Avenue
P.O. Box 1475
Eugene, OR 97440
Telephone: (541) 686-8511
Facsimile: (541) 344-2025

**Of Attorneys for Defendant**

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **JOHN DOE;** | **Case No. 6:17-CV-01103-MK** |
| Plaintiff, | **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT** |
| v. | |
| **UNIVERSITY OF OREGON;** | |
| Defendant. | |

## Introduction

Plaintiff is a male student at the University of Oregon (the "University"). In 2016, a female University student filed a complaint against him alleging nonconsensual sexual activity. Upon receiving that complaint, the University complied with its legal duties to conduct an investigation and hold an administrative hearing to determine whether Plaintiff committed the alleged misconduct. The University ultimately determined that the female student's allegations were credible and suspended Plaintiff for one year. Before the suspension took effect, Plaintiff

Page 1 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

{01921847.DOCX}

challenged the University's determination in a state court writ of review proceeding where he alleged the University violated his constitutional rights during the disciplinary proceeding and failed to follow some of its own procedures. The trial court made no findings regarding Plaintiff's constitutional claims. The trial court also made no findings regarding the female student's credibility. Nor did the trial court find that Plaintiff did not commit the alleged misconduct. The trial court did find, however, that the University violated certain of its own procedures and therefore vacated the University's determination. The trial court also precluded the University from re-doing the administrative hearing. The University appealed those decisions, but agreed to settle the appeal under terms that included Plaintiff having no contact with the female student.

This case is Plaintiff's attempt at a second bite at the apple. Although he continues to assert that his due process and other constitutional rights were violated, those claims were dismissed by Judge Aiken, or dismissed pursuant to the Parties' partial settlement agreement. Accordingly, the University denies Plaintiff's assertions that the University or its employees violated his constitutional or statutory rights. The only claims that remain at issue are Plaintiff's breach of contract and negligence claims. For the reasons stated above and below, the University disputes Plaintiff's claims and answers Plaintiff's Corrected Third Amended Complaint as follows:

### Responding to Allegations in the Complaint

1.      The University admits the allegations contained in paragraph 1, which relates to jurisdiction.

2.      Paragraph 2 states a legal conclusion to which no response is required.

3.      In answering paragraph 3, the University admits that venue in this District is proper pursuant to 28 U.S.C. § 1391(b).

4.      In answering paragraph 4, the University admits that Plaintiff is a resident of Oregon and has been a student at the University since Fall 2015.

Page 2 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

5.      In answering paragraph 5, the University admits that Plaintiff is proceeding in this action under a pseudonym.  The Family Educational Rights and Privacy Act ("FERPA") does not require that.  The remainder of paragraph 5 states a legal conclusion to which no response is required.  To the extent any response is appropriate, the University otherwise denies the allegations contained in paragraph 5.

6.      In answering paragraph 6, the University admits that it is a public university and a governmental entity.

7.      In answering paragraph 7, the University admits that it has a Governing Board and has its primary campus in Eugene, Oregon.

8.      In answering paragraph 8, the University admits that it has Bylaws and that the University Bylaws and Oregon statutes speak for themselves.

9.      In answering paragraph 9, the University admits that several of its departments, including the Office of the Director of Student Conduct and Community Standards, have developed the University's procedures for investigating and responding to complaints of sexual misconduct by students.  The University further admits that it had at all relevant times a Student Conduct Code ("SCC") and Student Conduct Standard Operating Procedures Regarding Sexual Misconduct, Sexual Harassment, and Unwanted Sexual Contact ("SOPs") and that the SCC and SOPs speak for themselves.  The University further admits that it has a Residence Hall Contract with students residing in University housing and that the Residence Hall Contract speaks for itself.  The University otherwise denies the allegations contained in paragraph 9.

10.     The University admits the allegations contained in paragraph 10.

11.     In answering the first sentence of paragraph 11, the University admits that Sandy Weintraub was at all relevant times the University's Director of Student Conduct and Community Standards.  The University further admits that several of its departments, including the Office of the Director, have developed the University's procedures for investigating and responding to complaints of sexual misconduct.  The University further admits that the Director

Page 3 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

of Student Conduct and Community Standards delegates authority to the decision-makers in individual student conduct cases.  The University otherwise denies the allegations contained in paragraph 11.

12.    In answering paragraph 12, the University admits that Carol Millie was at all relevant times a Senior Equal Opportunity Specialist in the Office of Affirmative Action and Equal Opportunity, was employed by the University, and was the University's designated decision-maker with respect to the allegations of sexual misconduct against Plaintiff.  The University otherwise denies the allegations contained in paragraph 12.

13.    In answering paragraph 13, the University admits that Robin Holmes was at all relevant times the University's Vice President for Student Life.  The University further admits that Ms. Holmes had supervisory authority over Mr. Weintraub.  The University further admits that Ms. Holmes designated the person who decided Plaintiff's appeal of the University's decision.  The University otherwise denies the allegations contained in paragraph 13.

14.    In answering paragraph 14, the University admits that Plaintiff has been a student at the University since Fall 2015 and resided in University housing from late September 2015 through mid-June 2016.  The University further admits that Jane Roe was at all relevant times a student at the University.  The University further admits that it issued to Plaintiff a room change notice dated February 18, 2016 and that the room change notice speaks for itself.  The University further admits that it notified Plaintiff in February 2016 of allegations of sexual misconduct by Jane Roe and that Plaintiff has denied the allegations.  The University further admits that Plaintiff submitted the results of four polygraph examinations to Ms. Millie.  Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination reports speak for themselves.  The University denies the remaining allegations contained in paragraph 14.

15.    In answering paragraph 15, the University admits that it investigated Jane Roe's allegations against Plaintiff and that Ms. Millie conducted an administrative conference.  The

Page 4 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

University further admits that Ms. Millie issued a Notice of Findings dated June 29, 2016 ("Notice of Findings") and that the Notice of Findings speaks for itself. The University otherwise denies the allegations contained in paragraph 15.

16.     In answering paragraph 16, the University admits that Plaintiff filed a Sexual Misconduct Appeal with the University on or about July 20, 2016 and that Ms. Holmes designated the person who decided Plaintiff's appeal. The University otherwise denies the allegations contained in paragraph 16.

17.     In answering paragraph 17, the University admits that a decision regarding "the appeal of Student Conduct Case # 0425-001-2016" was issued on or around September 7, 2016, and that the decision speaks for itself. The University otherwise denies the allegations contained in paragraph 17.

18.     In answering paragraph 18, the University admits that Plaintiff filed a Petition for Writ of Review in Lane County Circuit Court Case No. 16CV30413 (the "WOR Action") on September 16, 2016 and that the Petition speaks for itself. In answering the remainder of paragraph 18, the University admits that the Lane County Circuit Court issued a judgment in case number 16CV30413 and that the court transcript and judgment speak for themselves. The University further admits that the Circuit Court partially adopted an Appendix and that the Appendix and the Circuit Court's ruling on the record regarding the Appendix speak for themselves. The University otherwise denies the allegations contained in paragraph 18.

19.     In answering paragraph 19, the University admits that it appealed the decision and judgment in the WOR Action. The University further admits that it entered a settlement agreement with Plaintiff in 2017 (the "2017 Settlement") and that the 2017 Settlement speaks for itself. The University otherwise denies the allegations contained in paragraph 19.

20.     In answering paragraph 20, the University admits that Plaintiff filed his first Complaint (Dkt. #1) in this action on or around July 17, 2017 against the University, Ms. Millie, Mr. Weintraub, and Ms. Holmes. The University further admits that Plaintiff filed a Second

Page 5 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

Amended Complaint (Dkt. #43) and that the Second Amended Complaint speaks for itself. The University further admits that, as a result of a partial settlement between the University and Plaintiff, Plaintiff has voluntarily dismissed his claims for alleged violation of Title IX, Equal Protection, Breach of the Covenant of Good Faith and Fair Dealing, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress. The University otherwise denies the allegations contained in paragraph 20.

22. In answering paragraph 21, the University admits that it entered a Partial Settlement Agreement with Plaintiff, which the University filed with this Court (Dkt. #60) and that the Partial Settlement Agreement speaks for itself. The University otherwise denies the allegations contained in paragraph 21.

22. In answering paragraphs 22-40, the University admits that it had at all relevant times an SCC and SOPs and that the SCC and SOPs speak for themselves. The University otherwise denies the allegations contained in paragraphs 22-40.

23. The University denies Plaintiff's characterization, contained in a heading above paragraph 41 and elsewhere, of the University's investigation and adjudication as "illegal."

24. In answering paragraph 41, the University admits that Ms. Millie's Notice of Findings stated as undisputed facts that "Prior to the night in question complainant and accused student were friends and their friendship had previously included consensual sexual activities exclusive of penetrative sex. … The parties ended their consensual sexual activities towards the end of fall term 2015." The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 41 and therefore denies the same.

25. In answering paragraph 42, the University admits that Ms. Millie's Notice of Findings stated as undisputed facts:

> Around December of 2015, [complainant and accused student]
> discussed accused student's concern that he may have contracted
> herpes from complainant during their consensual sexual activities.

Page 6 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

The University further admits that Ms. Millie's Notice of Findings acknowledged that complainant "submitted a December 2015 text message exchange between he and his mother in which they discuss his concern for contracting herpes. Witness 3 … and witness 8 acknowledge awareness of accused student's germaphobia." The University further admits that the Notice of Findings describes information provided by witnesses 3 and 8 with respect to Plaintiff's alleged germaphobia. The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 42 and therefore denies the same.

26.    The University lacks sufficient information to admit or deny the allegations contained in paragraph 43, which concern Plaintiff and Jane Roe's relationship during winter term of 2016, and therefore denies the same.

27.    In answering paragraph 44, the University admits that Ms. Millie's Notice of Findings stated that both parties acknowledged meeting for coffee and going for a walk on or around February 11, 2016. The University admits the Notice of Findings states, "I find there is compelling information demonstrating it to be more likely than not that accused student engaged in the behavior complainant reports during the walk on or about February 11, 2016." The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 44 and therefore denies the same.

28.    In answering paragraph 45, the University admits that Ms. Millie's Notice of Findings stated as undisputed facts:

> On the night of February 12, 2016, complainant went out partying and while partying complainant voluntarily consumed a significant amount of alcohol and became highly intoxicated to the point of vomiting. … In the early morning hours of February 13, 2016, [complainant and accused student] engaged in a series of text messages in which complainant advised accused student that she was home from partying, and asked for his assistance as she was afraid to sleep because she was vomiting due to the amount of alcohol she had consumed. Upon the conclusion of the text message exchange, complainant went to accused student's room. Complainant arrived at accused student's residence hall room and

Page 7 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

on entering the room, complainant collapsed and/or fell onto accused student's roommate's bed.

The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 45 and therefore denies the same.

29.    In answering paragraphs 46-47, the University admits that Ms. Millie's Notice of Findings stated as undisputed facts that "Sometime after complainant's arrival at accused student's room, and before she left the room the next morning, accused student left the room. … Complainant left accused student's room the following morning while accused student was sleeping in a sitting position on his bed." The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraphs 46-47 and therefore denies the same.

30.    The University admits the allegations contained in paragraph 48.

31.    In answering paragraph 49, the University admits that Jane Roe made a complaint of sexual misconduct by Plaintiff on February 16, 2016. The University further admits that it issued to Plaintiff a room change notice dated February 18, 2016 and that the room change notice speaks for itself. The University further admits that it issued to Plaintiff an Emergency Action Letter dated April 12, 2016 and that the Emergency Action Letter speaks for itself.. The University otherwise denies the allegations contained in paragraph 49.

32.    In answering paragraph 50, the University admits that Ms. Holmes did not overturn the April 12, 2016 emergency action against Plaintiff. The University otherwise denies the allegations contained in paragraph 50.

33.    In answering paragraph 51, the University admits that it has an SCC and that the SCC speaks for itself.

34.    The University denies the allegations contained in paragraph 52.

35.    In answering paragraph 53, the University admits that a preliminary hearing on the University's emergency action was held on April 15, 2016. The University otherwise denies the allegations contained in paragraph 53.

36.     In answering paragraph 54, the University admits that, on or around April 18, 2016, Mr. Weintraub sustained the emergency action.  The University denies that its emergency action required Plaintiff to change dorm rooms.  The University otherwise denies the allegations contained in paragraph 54.

37.     In answering paragraph 55, the University admits that, on or around April 22, 2016, Ms. Holmes denied Plaintiff's appeal of the emergency action.  The University denies that its emergency action required Plaintiff to change dorm rooms.  The University otherwise denies the allegations contained in paragraph 55.

38.     In answering paragraph 56, the University admits that on or around May 4, 2016, Ms. Holmes denied Plaintiff's request to review the emergency action.  The University denies that its emergency action required Plaintiff to change dorm rooms.  The University otherwise denies the allegations contained in paragraph 56.

39.     In answering paragraph 57, the University admits that Plaintiff was prohibited from being present in the Hamilton residence hall complex, including the Hamilton Dining Complex.  The University otherwise denies the allegations contained in paragraph 57.

40.     In answering paragraph 58, the University admits that it conducted an investigation into Jane Roe's complaint of sexual misconduct and that an Administrative Conference regarding the complaint was scheduled for May 17, 2016.  The University otherwise denies the allegations contained in paragraph 58.

41.     The University admits the allegations contained in paragraph 59.

42.     In answering paragraph 60, the University admits that Ms. Millie interviewed Jane Roe on February 23, 2016 and April 6, 2016 and that summaries of those interviews are included in the Record.  The University further admits that the Record reflects that Ms. Millie and UOPD Officer Royce Myers met with Jane Roe on April 22, 2016.  The University further admits that Ms. Millie organized a meeting between UOPD Officer Royce Myers and Jane Roe on June 10, 2016, as reflected in Ms. Millie's Activity Log.  Except as explicitly stipulated as

Page 9 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 60.

43.    In answering paragraph 61, the University admits that Ms. Millie's Notice of Findings stated,

> In her first, interview, complainant remembers that after she collapsed on accused student's roommate's bed, she either passed out or fell asleep.  Sometime after this, accused student moved complainant off the bed and on to the floor.  Complainant recalled that after moving her to the floor, accused student moved her on top of him. … Complainant's next memory is waking up to find accused student had his hand down her pants. … Complainant next awoke to find accused student was trying to kiss her and asking how she wanted it. … Complainant reports accused student's hands were between her pants and underwear.

The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 61 and therefore denies the same.

44.    In answering paragraph 62, the University admits that Ms. Millie's Notice of Findings stated as an undisputed fact: "While in accused student's room, complainant sent a text message to witness 10, at 3:24 a.m., saying she had almost been raped."  The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 62 and therefore denies the same.

45.    In answering paragraph 63, the University admits that Plaintiff submitted to Ms. Millie reports regarding several polygraph examinations.  Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination reports speak for themselves.  The University otherwise denies the allegations contained in paragraph 63.

46.    In answering paragraph 64, the University admits that Ms. Millie's Notice of Findings stated:

> I find it more likely than not that accused student engaged in the alleged text message conversation. … Accordingly, in my analysis, I will consider as fact that accused student sent a text message to

Page 10 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

> complainant on the morning of February 13, 2016 in which he
> acknowledges cuddling with complainant and apologizes for his
> behavior.

University further admits that Ms. Millie's Notice of Findings stated, "neither party is able to produce the original text messages on their phone to concretely decide this matter." The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 64 and therefore denies the same.

47. In answering paragraph 65, the University admits that Ms. Millie's Notice of Findings stated that Jane Roe's "advisor originally states [sic] that the inability to retrieve the original purported messages is because the messages were lost when complainant blocked accused student from her phone." The University otherwise lacks sufficient information to admit or deny the allegations contained in paragraph 65 and therefore denies the same.

48. In answering paragraph 66, the University admits that Plaintiff provided information as to how text messages are not automatically deleted when a contact is blocked on a cell phone. The University further admits that Plaintiff presented information demonstrating that it is possible to create a fake text message conversation. The University further admits that Plaintiff presented expert information regarding the ability to fake screenshots. The University otherwise denies the allegations contained in paragraph 66.

49. The University lacks sufficient information to admit or deny the allegations contained in paragraph 67, which concern the general availability of certain information regarding text messages, and therefore denies the same.

50. In answering paragraph 68, the University admits that Jane Roe's advisor submitted to Ms. Millie an email that was added to the Record as Exhibit R and that Exhibit R speaks for itself. The University further admits that Jane Roe provided the following information during the Administrative Conference:

> Following this we had a meeting with Officer Myers, who was
> there to help us, you know, figure out the situation with the text
> messages, and, you know, it was noted that there was that situation

Page 11 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
CORRECTED THIRD AMENDED COMPLAINT

> that it was thought that by blocking the text -- by blocking his
> phone number everything would be deleted off my phone. To
> which I then responded saying that was not the case. It was all a
> process to which I first blocked his number and then I deleted his
> number, and then I deleted the messages and deleted him from my
> call log.

The University further admits that Ms. Millie's summary of her interviews with Jane Roe states, "Complainant no longer has the original text messages that were exchanged between her and the accused student on the morning of February 13, 2016. … She took a screenshot of this text message exchange and saved the screenshot to her phone that morning." Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 68.

51.    The University lacks sufficient information to admit or deny the allegations contained in paragraph 69, which concern interactions between Jane Roe and her ex-boyfriend, and therefore denies the same.

52.    In answering paragraph 70, the University admits that Plaintiff submitted to Ms. Millie reports regarding several polygraph examinations. Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination reports speak for themselves. The University otherwise denies the allegations contained in paragraph 70.

53.    In answering paragraph 71, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself. The University otherwise denies the allegations contained in paragraph 71.

54.    In answering paragraph 72, the University admits that Plaintiff submitted to Ms. Millie reports regarding several polygraph examinations. Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination reports speak for themselves. The University otherwise denies the allegations contained in paragraph 72.

Page 12 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

55.    The University denies the allegations contained in paragraph 73.

56.    The University admits the allegations contained in the first sentence of paragraph 74.  The University admits that the Fact-Gathering Investigative Record in Plaintiff's case states "Complainant told [her roommate] that during the walk the accused student was trying to kiss her, hold her hand and do stuff to which complainant told him 'no.'"  The University otherwise denies the allegations contained in paragraph 74.

57.    In answering paragraph 75, the University admits that a recording was made of the Administrative Conference and that the recording speaks for itself.  The University otherwise denies the allegations contained in paragraph 75.

58.    In answering paragraph 76, the University admits that Plaintiff has denied that he engaged in any verbal or physical behavior of a sexual nature with Jane Roe during the walk.  The University otherwise denies the allegations contained in paragraph 76.

59.    In answering paragraphs 77-79, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University otherwise denies the allegations contained in paragraphs 77-79.

60.    In answering paragraph 80, the University admits that Jane Roe provided additional information about the events of February 12–13, 2016 to Ms. Millie during the follow-up interview conducted on April 6, 2016.  The University otherwise denies the allegations contained in paragraph 80.

61.    In answering paragraph 81, the University admits that two witnesses provided the following information at the Administrative Conference:  that they were playing video games at low volume in the dorm room directly across the hall from Plaintiff's in the early morning of February 13, 2016; that Plaintiff's dorm room door was open a little bit; that they would have been able to hear any noise or commotion in Plaintiff's room; and that they did not hear any noise coming from Plaintiff's room.  The University otherwise denies the allegations contained in paragraph 81.

Page 13 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

62.     In answering paragraphs 82-83, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University further answers that guidance from the United States Department of Education Office for Civil Rights in effect at all relevant times stated that colleges and universities, including the University, should train all persons involved in responding to allegations of sexual misconduct on "the effects of trauma, including neurobiological change." U.S. Dep't of Educ., Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014), *withdrawn by* U.S. Dep't of Educ., Dear Colleague Letter (Sept. 22, 2017).  The University further answers that the Violence Against Women Act requires that university officials who conduct disciplinary proceedings in cases of alleged sexual assault "at a minimum, receive annual training on the issues related to dating violence, domestic violence, sexual assault, and stalking and on how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability."  34 C.F.R. § 668.46(k)(2)(ii).  The University further answers that paragraph seven of its SOPs in effect during the relevant time period stated, "Decision-makers shall also receive training on how to conduct a trauma-informed investigation and an Administrative Conference in a manner that protects the safety and rights of Complainant, Accused Student and witnesses and promotes accountability."  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraphs 82-83.

63.     In answering paragraph 84, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University otherwise denies the allegations contained in paragraph 84.

64.     The University denies the allegations contained in paragraphs 85-86.

65.     In answering the first sentence of paragraph 87, the University admits that Plaintiff submitted a report from Dr. Daniel Reisberg of Reed College in connection with his appeal.  The University otherwise denies the allegations contained in the first sentence of

Page 14 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

paragraph 84.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise lacks sufficient information to admit or deny the remaining allegations contained in paragraph 87 and therefore denies the same.

66.    In answering paragraph 88, the University admits that Plaintiff's appeal to the University was denied and that the letter denying the appeal speaks for itself.  The University otherwise denies the allegations contained in paragraph 88.

67.    In answering paragraph 89, the University admits that Ms. Millie issued a Notice of Findings and a Fact-Gathering Investigative Record with respect to the allegations against Plaintiff and that the Notice of Findings and the Fact-Gathering Investigative Record speak for themselves.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 89.

68.    In answering paragraph 90, the University admits that Jane Roe said during the Administrative Conference that she had disclosed to Ms. Millie, Officer Myers, and her advisor prior to the Administrative Conference that she had deleted the iMessages she had exchanged with Plaintiff after saving a screen shot of the iMessages.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 90.

69.    In answering paragraphs 91-92, the University admits that Exhibit R to the Record was admitted to the Record for the first time during the Administrative Conference and was not provided to Plaintiff prior to the Administrative Conference.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraphs 91-92.

70.    In answering paragraph 93, the University admits that Plaintiff, through his attorney, requested to question Jane Roe's advisor regarding the deletion of the February 13, 2016 iMessages between Jane Roe and Plaintiff.  The University otherwise lacks sufficient

Page 15 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

information to admit or deny the remaining allegations contained in paragraph 93 and therefore denies the same.

71.    In answering paragraph 94, the University admits that Ms. Millie did not reconvene the Administrative Conference after May 17, 2016, but allowed Plaintiff to submit written questions for Jane Roe's advisor after the Administrative Conference and that she posed those questions to Jane Roe's advisor that were determined to be relevant and not unduly harassing. The University otherwise denies the allegations contained in paragraph 94.

72.    In answering paragraph 95, the University admits that Ms. Millie stated in an email to Jane Roe and her advisor, which was not sent to Plaintiff, "I ask that you please provide me with a written response that either provides an answer to the question posed or a statement that you are declining to respond to that question." Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 95.

73.    In answering paragraph 96, the University admits that Jane Roe's advisor declined to respond to Plaintiff's attorney's questions. The University further admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself. The University otherwise denies the allegations contained in paragraph 96.

74.    In answering paragraphs 97-98, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself. The University otherwise denies the allegations contained in paragraphs 97-98.

75.    In answering paragraph 99, the University admits that, on May 31, 2016, Jane Roe submitted a petition to include new information into the record. The University further admits that the new information was a Facebook message from Plaintiff to Jane Roe stating, "Can I ask are you going to report me?" Except as explicitly stipulated as part of the Partial

Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 99.

76.     In answering paragraph 100, the University admits that Ms. Millie added to the Record the Facebook message from Plaintiff to Jane Roe.  The University further admits that Ms. Millie notified Plaintiff in an email dated June 1, 2016 that the Facebook message had been added to the Record.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 100.

77.     In answering paragraph 101, the University admits that it had at all relevant times SOPs and that the SOPs speak for themselves.  The University otherwise denies the allegations contained in paragraph 101.

78.     In answering paragraph 102, the University admits that Ms. Millie added to the record after May 31, 2016 a Facebook message from Plaintiff to Jane Roe dated February 13, 2016.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 102.

79.     In answering paragraph 103, the University admits that Plaintiff submitted to Ms. Millie an expert opinion describing how a person might create a fake Facebook message and that the expert opinion speaks for itself.  The University further admits that Plaintiff submitted to Ms. Millie a report regarding a polygraph examination. Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination report speaks for itself.  The University otherwise denies the allegations contained in paragraph 103.

80.     In answering paragraph 104, the University admits that UOPD Officer Myers submitted a written summary of what was found in his review of Jane Roe's Facebook account in relation to the February 13, 2016 Facebook message.  The University further admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University further responds that the first sentence of

Page 17 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

paragraph 104 contains a legal conclusion to which no response is required.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 104.

81.     In answering paragraph 105, the University admits that it has an SCC and that the SCC speaks for itself.  The University further admits that Ms. Millie admitted to the Record Officer Myers' written summary regarding the February 13, 2016 Facebook message and that Ms. Millie did not notify Plaintiff prior to doing so.  Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University otherwise denies the allegations contained in paragraph 105.

82.     In answering paragraph 106, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University further admits that Plaintiff submitted information that he had conducted a factory reset of his laptop on May 27, 2016 because of a malware problem that had affected his family's home computers.  The University further admits that on May 31, 2016 Jane Roe submitted her petition to include the February 13, 2016 Facebook message in the Record. The University otherwise denies the allegations contained in paragraph 106.

83.     In answering paragraph 107, the University admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself. The University otherwise denies the allegations contained in paragraph 107.

84.     In answering paragraph 108, the University admits that John Doe submitted the results of several polygraph examinations. Without commenting on the trustworthiness or reliability of the polygraph examination reports, the University admits that the polygraph examination reports speak for themselves.  The University further admits that Ms. Millie issued a Notice of Findings with respect to the allegations against Plaintiff and that the Notice of Findings speaks for itself.  The University otherwise denies the allegations contained in paragraph 108.

85.     Paragraph 109 states a legal conclusion to which no response is required.

Page 18 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

86.     In answering paragraph 110, the University admits that Lucinda Gardner stated during the Administrative Conference that she had never before had an individual pass three polygraph tests.  The University further admits that Ms. Gardner provided the following information: "There is a higher instance of people having false positives, meaning there appears that they're being deceptive when they're not. It was -- it would be more likely that that would happen than for a deceptive person to appear that they're truthful."  The University otherwise denies the allegations contained in paragraph 110.

87.     University denies the allegations contained in paragraphs 111-112.

88.     In answering paragraph 113, the University admits that Ms. Millie gathered cross-examination questions from each party and that Ms. Millie posed cross-examination questions to witnesses during the Administrative Conference.  The University otherwise denies the allegations contained in paragraph 113.

89.     The University denies the allegations contained in paragraphs 114-119.

90.     The University admits the first and second sentences of paragraph 120.  The University further admits that a decision on Plaintiff's appeal was issued on September 7, 2016 and that the decision speaks for itself.  The University otherwise denies the allegations contained in paragraph 120.

91.     In answering paragraph 121, the University admits that the Lane County Circuit Court issued a judgment in case number 16CV30413 and that the judgment speaks for itself. The University otherwise denies the allegations contained in paragraph 121.

92.     Except as explicitly stipulated as part of the Partial Settlement Agreement in this matter, the University denies the allegations contained in paragraph 122.

93.     The University denies the allegations contained in paragraphs 123-128.

94.     The University admits the allegations contained in paragraphs 129-130, which relate to the dismissal of Plaintiff's first and second claims.

Page 19 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

95.     The University answers paragraph 131 as it did the allegations incorporated therein.

96.     In answering paragraphs 132-139, the University admits that it entered into a Residence Hall Contract with Plaintiff and that the Residence Hall Contract speaks for itself. The University further admits that it had at all relevant times an SCC and SOPs and that the SCC and SOPs speak for themselves. The University further admits that it entered into a Partial Settlement Agreement with Plaintiff that included certain stipulations and that the Partial Settlement Agreement speaks for itself. The University otherwise denies the allegations contained in paragraphs 132-139.

97.     Paragraph 140 states a conclusion of law to which no response is required.

98.     The University lacks sufficient information to admit or deny the allegations regarding the amount of Plaintiff's attorney fees contained in paragraph 141 and therefore denies the same. In answering the remainder of paragraph 141, the University admits that it entered into a Residence Hall Contract with Plaintiff and that the Residence Hall Contract speaks for itself. The University otherwise denies the allegations contained in paragraph 141.

99.     In answering paragraph 142, the University admits that it entered into a Residence Hall Contract with Plaintiff and that the Residence Hall Contract speaks for itself. The University otherwise lacks sufficient information to admit or deny the remaining allegations contained in paragraph 142 and therefore denies the same.

100.    The University admits the allegations contained in paragraph 143, which relates to the dismissal of Plaintiff's fourth claim.

101.    The University answers paragraph 144 as it did the allegations incorporated therein.

102.    The University denies the allegations contained in paragraphs 145-146.

103.    In answering paragraphs 147-150, the University admits that it entered into a Residence Hall Contract with Plaintiff and that the Residence Hall Contract speaks for itself.

The University further admits that it had at all relevant times an SCC and SOPs and that the SCC and SOPs speak for themselves.  The University further admits that it entered into a Partial Settlement Agreement with Plaintiff that included certain stipulations and that the Partial Settlement Agreement speaks for itself.  The University otherwise denies the allegations contained in paragraphs 147-150.

104.    The University lacks sufficient information to admit or deny the allegations regarding the amount of Plaintiff's attorney fees contained in paragraph 151 and therefore denies the same.  The University otherwise denies the allegations contained in paragraph 151.

105.    The University admits the allegations contained in paragraphs 152-153, which relate to the dismissal of Plaintiff's sixth and seventh claims..

106.    Unless expressly admitted or stipulated, the University denies all allegations and characterizations contained in Plaintiff's Corrected Third Amended Complaint.

### First Affirmative Defense (Failure to State a Claim)

107.    Plaintiff's Corrected Third Amended Complaint, in whole or in part, fails to state ultimate facts sufficient to constitute a claim upon which relief can be granted.

### Second Affirmative Defense (Duplicative Remedies)

108.    Plaintiff is not entitled to duplicative remedies for the same underlying actions or omissions under the claims invoked in this action.

### Third Affirmative Defense (Legitimate Non-Discriminatory Reasons)

109.    Any actions the University or its employees took with respect to Plaintiff, to the extent they occurred, were for legitimate, non-discriminatory reasons.

### Fourth Affirmative Defense (Lack of Discriminatory Motive)

110.    Any actions the University or its employees took with respect to Plaintiff, to the extent they occurred, were not motivated by Plaintiff's membership in any protected class or by any other unlawful motive.

{01921847.DOCX}

**Fifth Affirmative Defense (Plaintiff's Breach)**

111.    To the extent there is a contract between Plaintiff and the University and the SCC is part of the contract, Plaintiff breached the contract prior to any breach by the University by violating the SCC.

112.    To the extent the Residence Hall Contract between Plaintiff and the University is applicable to the University's alleged conduct described in Plaintiff's Corrected Third Amended Complaint, Plaintiff breached the Residence Hall Contract prior to any breach by the University by violating the Residence Hall Contract.

**Sixth Affirmative Defense (Election of Remedies)**

113.    Plaintiff's contract claim is barred because he elected to pursue an internal appeal process and writ of review proceeding prior to bringing this action.

**Seventh Affirmative Defense (Exclusive Remedy)**

114.    Because the alleged rights asserted by Plaintiff in his contract claim do not actually arise from a contract between Plaintiff and the University, the Writ of Review proceeding was Plaintiff's exclusive remedy for his contract claims.

**Eighth Affirmative Defense (No Recovery of Attorney's Fees as Damages)**

115.    Plaintiff is barred from recovering as damages his attorney's fees incurred in prior actions.

**Ninth Affirmative Defense (Eleventh Amendment Immunity)**

116.    The University is entitled to immunity under the Eleventh Amendment against Plaintiff's state-law claims.

**Tenth Affirmative Defense (Failure to Mitigate Damages)**

117.    Without waiving any defenses, Plaintiff declined to avail himself of all support and resources made available to him by the University and otherwise, as was his right.  To the extent such support and/or resources would have reduced any damages Plaintiff now seeks in this lawsuit, the University is not liable for such damages.

118.    Without waiving any defenses, to the extent the attorney who represented Plaintiff in the student conduct proceeding and writ of review proceeding charged unreasonable fees for her services, the University is not liable for Plaintiff's damages, if any, resulting from such unreasonable fees.

**Eleventh Affirmative Defense (No Special Relationship)**

119.    The University had no special relationship with Plaintiff.  The University has no duty of care to Plaintiff under Plaintiff's alleged common law negligence theories.

**Twelfth Affirmative Defense (Oregon Tort Claims Act)**

120.    Plaintiff failed to provide the notice required by the Oregon Tort Claims Act ("OTCA," ORS 30.275).

**Thirteenth Affirmative Defense (Statutory Liability Cap)**

121.    Defendant's liability, including for Plaintiff's claimed damages, attorney fees, and costs, if any, is capped by the OTCA, ORS 30.260 *et seq.*

**Fourteenth Affirmative Defense (Punitive Damages Barred)**

122.    Plaintiff's claim for punitive damages is barred by the OTCA, ORS 30.269.

**Fifteenth Affirmative Defense (Contractual Damages Limitations)**

123.    Plaintiff's claim for damages, if any, is barred in whole or in part by paragraph 1 of the Disclaimer and Dispute Resolution Provisions of the Residence Hall Contract between Plaintiff and the University.

**Sixteenth Affirmative Defense (Foreseeability)**

124.    The injuries alleged by Plaintiff were not foreseeable as a matter of law.

**Seventeenth Affirmative Defense (Discretionary Immunity)**

125.    The University is entitled to discretionary immunity regarding its handling of the student conduct proceeding, including the appeal.

**Eighteenth Affirmative Defense (Economic Loss Rule)**

126.    Plaintiff's claimed damages are barred in whole or in part by the economic loss rule.

WHEREFORE the University prays:

1.    That Plaintiff take nothing by way of his Corrected Third Amended Complaint and that it be dismissed, with prejudice;

2.    That Judgment be entered in favor of the University for its costs and disbursements; and

3.    For such other relief as may be appropriate.

DATED: January 22, 2020.

HERSHNER HUNTER, LLP

By  */s/ Lillian Marshall-Bass*

**Amanda M. Walkup, OSB 934508**
awalkup@hershnerhunter.com
**Lillian Marshall-Bass, OSB 161811**
lmarshall-bass@hershnerhunter.com
Telephone: (541) 686-8511
Facsimile: (541) 344-2025
**Of Attorneys for Defendant**

Page 24 – DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CORRECTED THIRD AMENDED COMPLAINT

{01921847.DOCX}